No. 13,056.

STATE OF LOUISIANA VS. WILLIAM C. PICTON.

SYLLABUS.

1. Defense sought to exclude certain testimony on the ground that it involved a confession of guilt by accused. Exclusion was claimed on the ground that the confession was brought about by threat of prosecution if settlement of moneys embezzled was not made. HELD: Not a case of confession of guilt admitted to the jury without proof of its voluntary character.

2. There is a broad distinction between the mere admission of inculpatory facts and a confession of guilt.

3. Acknowledgement of facts tending to establish guilt differentiated from confession. A damaging fact may be admitted without any intention to confess guilt.

4. Where a person only admits certain facts from which the jury may or may not infer guilt, there is no confession.

ON APPEAL from the Crimianl District Court for the Parish of Orleans. *Baker, J.*

*M. J. Cunningham,* Attorney General, and *Robert H. Marr,* District Attorney, (Chandler C. Luzenberg, of Counsel) for Plaintiff and Appellee.

*J. H. Ferguson* and *Henriques & Dunn* for Defendant, Appellant.

Submitted on briefs February 25, 1899.
Opinion handed down March 7, 1899.

The opinion of the court was delivered by
BLANCHARD, J. From a conviction for embezzlement and a sentence of eighteen months at hard labor, defendant appeals.

At the time of the commission of the offense with which' he is charged, the accused was rate clerk of the Southern Pacific Railway Company.

As such it was part of his duty to receive money for freight sent over the lines of the company prepaid, and the averment of the bill of information is that he embezzled certain funds so received, placing the amount at seven dollars and thirty-nine cents.

He relies for reversal upon what is claimed to be an erroneous ruling of the trial judge in admitting the testimony of Fay, Pettigrew and Wermuth, witnesses for the prosecution, who testified to certain conduct and statements of the accused after the shortage in his accounts was discovered, but before any formal charge of violation of law had been preferred against him.

The contention of defendant is that the object, intent and scope of this testimony was to show that defendant had confessed and admitted his fault to Fay, assistant manager of the Southern Pacific Company, and therefore "one in authority."

The objection was to any such statement, or admission, or confession, on the ground that, if made, the same was occasioned and brought about by undue influences and through threats or promises made by said Fay, by means of which defendant was induced to admit a shortage in his accounts, and to agree to settle same in order to avoid publicity and escape prosecution.

All of the testimony relating to this feature of the case was taken down in writing, and comes up in the record as part of the bill of exceptions.

From it we learn that the accused had been for some years in the employment of the Southern Pacific Company; that within a day or two of the end of October, 1897, he suddenly left his position, and for several days his whereabouts were unknown to his employers; that an investigation of his accounts followed, and a shortage was discovered; that this becoming known, Mr. Givens, a brother-in-law of his, called to see Fay, manager of the company, and stating he understood defendant was in some trouble, asked that the matter be kept quiet until it could be investigated, and enquired if defendant would be given an opportunity to go over the accounts, to which Fay replied he would; that shortly afterwards, Givens, Ferguson and Kingston (the two latter, friends of the accused), called to see Fay, who had had some conversation over the telephone with Ferguson about the matter; that the object of this visit was to arrange an amicable settlement of the shortage, to the end of satisfying the claim of the company and relieving the defendant of the apprehension of prosecution; that several interviews on the subject were had by these parties with Fay; that the latter insisted the entire shortage, amounting to something like two thousand dollars, should be made good, and that if it were, so far as he and the company were concerned, the prosecution would not be

40

pushed; that if it were not settled a vigorous prosecution would follow; that the matter was talked over between these parties and defendant and his wife; and that defendant, at his wife's insistance, and accompanied by her, and upon the advice of his brother-in-law, Givens, called upon Fay at his office on two occasions.

Defendant's version of what took place when he called to see Fay is, in substance, as follows: That he had been informed of the threat of prosecution if the matter was not settled; that to avoid publicity and for the sake of his family he went to see Fay; that he told the latter he was innocent and not guilty and that the shortage was the result of a series of mistakes; that he asked to see the list of items of the alleged shortage and the same was shown him; that Fay suggested the terms of a settlement which were that he (defendant) should pay one thousand dollars cash and give his notes, secured, for the balance, payable in monthly installments of $25.00; that he told Fay he would look into the matter and let him know; that there was no understanding between him and Fay as to immunity from prosecution in the event of settling the shortage, but the conversation with Fay was induced by the threat of prosecution which had been communicated to him, together with the promise of no steps being taken to prosecute if settlement were made; that when he had these conversations with Fay he (the accused) was not under the authority of Fay, nor in the employ of the Southern Pacific Company, and had not been for over two months, and was in the service of a Mr. McGuire; and that while neither Fay, nor other parties representing the company, had told him they could stop the prosecution, he (defendant) knew things had been hushed up before.

Manager Fay's version of what took place between defendant and himself is, in effect, as follows: That defendant and his wife came to his office as the result of a previous appointment made by his (defendant's) brother-in-law; that he (Fay) sent for Wermuth (in the employ of the company) and Pettigrew, who was agent of the security company that had gone on defendant's bond; that these parties came and defendant asked Wermuth to show him the statement of the shortage, which he did, and he and Wermuth had some conversation about the shortage; that since defendant claimed the shortage was due to mistakes, it was offered him to go over the accounts and point out the mistakes and the services of a man to assist in the investigation were tendered him; and that he did not avail himself of the offer to

examine the accounts, nor did he offer any explanation as to how the mistake occurred, but did aver at both the interviews his innocence of the charge of taking the company's money.

The witnesses Wermuth and Pettigrew testify substantially as did Fay, with more or less of detail.

As laying a foundation for the objection to the evidence of Fay, Pettigrew and Wermuth, the defense put Givens, the brother-in-law, and Ferguson and Kingston, friends of the accused, on the stand before the judge (the jury having been retired at request of counsel for defendant) to prove their conversations with Manager Fay relative to the shortage, the threat of prosecution if not settled, their efforts to arrange for a settlement, etc., and the fact that they communicated these things to the defendant.

The trial judge ruled the testimony of Fay, Pettigrew and Wermuth to be admissible, on the grounds: That the objection went rather to its effect than to its admissibility; that the real question presented was whether any such threat or promise had been made to the accused as would be likely to cause him to tell an untruth for fear of the threat, or from hope of profit from the promise; and that if what had taken place could in any sense be regarded as a confession, then, necessarily, its admissability as evidence would depend upon the circumstances under which it was made.

He then goes on to say the testimony objected to did not, to his mind, suggest that at the time the accused saw Fay, anything he said there was caused either by threat or inducement; that defendant went voluntarily to get a statement of his shortage and to go over his accounts; that Fay not only consented to his going over the accounts, but offered him assistance in the work; that that portion of defendant's testimony in which he speaks of an offer to compromise by the payment of $1,000.00 in cash, and balance in notes, did not go to the jury; that the testimony of the defendant, made part of the bill of exceptions, corroborates Fay as to what was said between them; and that, thus, the objection is not as to the truth of the statements, but on the ground that defendant's visit to Fay was caused by threats of prosecution.

"I was asked," he says, "to exclude this evidence because it was induced by threats and, therefore, likely to be untrue, when at the same time, and as a basis for its exclusion, the defendant testifies that it was true, and but repeats Fay's statement as to what took place. As

this interview was sought by defendant, all that occurred, and not detached parts, was, in my opinion, evidence proper for the consideration of the jury, when the facts showed that the defendant was in a position to speak, and when opportunity was offered and assistance tendered him to show where he had made the errors claimed."

. While we may not concur in all the judge says in support of his ruling, we agree with him in the main.

The testimony sought to be excluded was properly received.

We do not regard this as a case of confession of guilt admitted to the jury without proof of its voluntary character.

We look in vain in the narrative of what took place for a confession or admission of his guilt by defendant. On the contrary, he steadfastly asserted he was innocent of the charge.

A statement or declaration to amount to a confession must be *inculpatory,* and not *exculpatory* in its nature. A. & E. Ency. of Law, 2nd Ed. Vol. 6, 521, 522.

A confession is limited in its precise scope and meaning to the criminal act itself. It does not apply to acknowledgements of facts merely tending to establish guilt, since a damaging fact may be admitted without any intention to confess guilt. These are criminating *admissions* rather than confessions. *Ib.*

There is a broad distinction between the mere admission of inculpatory *facts* and a confession of guilt. Where a person only admits certain facts from which the jury may or may not infer guilt there is no confession. Covington vs. State, 79 Ga., 690.

The acts and conduct of a party at or about the time when he is charged to have committed a crime are receivable as evidence of a guilty mind, and while, in weighing such evidence, ordinary caution is required, such inferences are to be drawn from them as experience indicates is warranted. Rice on Evidence, Vol. 3, p. 503; also 500, 501, 502, section 318; Bishop New Crim. Proc. sections 1253, 1254; Clark's Crim. Proc. 511; Wharton's Crim. Ev. Sec. 679; A. & E. Ency. of Law, Vol. 6, 557.

There was no confession of defendant, and being none there was no basis for urging exclusion of the testimony because brought about by threats of prosecution on the one hand, or immunity from prosecution on the other.

That defendant's conduct, demeanor, silence in some things, acqui-

escence in others, in his interviews with Fay, was damaging to his case, there can be no doubt.

But the facts showing this were competent to go to the jury, from which it was their province to draw such inferences, or make such deductions, as they thought proper.

It has been held that the rule of inadmissibility of a confession procured by threat or promise, does not apply to admissions not involving the existence of a criminal intent.

In People vs. Parton, 49 Cal., 632, it was said: "An admission of a fact, not in itself involving criminal intent, is not to be rejected as evidence (without preliminary proof) merely because it may, when connected with other facts, tend to establish guilt."

In People vs. LeRoy, 65 Cal., 613, this language appears: "The point most relied on by counsel is that the court below erroneously admitted in evidence certain statements made by the defendant to the witness Lees. It is claimed that those statements were not voluntarily made, but were extorted from the defendant by means of threats or promises. * * * However this may be, it is a sufficient answer to say that the statements made by defendant, concerning which the witness for the prosecution was permitted to testify, did not constitute a confession admissable only after proof that it was made voluntarily. A confession is a person's declaration of his agency or participation in a crime. The term is restricted to acknowledgements of guilt. The statements of defendant given in evidence were not acknowledgements of his guilt; on the contrary, in his statements he all the time denied his guilt. The matters admitted by him, however, while not in themselves involving his guilt, did, when connected with other facts, tend to prove it. But proof of such was competent."

This ruling of the California court seems peculiarly applicable to the case at bar.

See also People vs. Heckman, 113 Cal., 80, and McLain vs. State, 18 Neb., 154.

We are constrained to hold defendant was properly convicted, and the judgment appealed from is, accordingly, affirmed.