PEOPLE v. CISMADIJA.

1. CRIMINAL LAW—ASSAULT WITH INTENT TO MURDER—TRIAL—
INSTRUCTIONS TO JURY—SELF-DEFENSE.

In a prosecution for an assault with intent to commit murder,
it was error to charge the jury that respondent, who in a dis-
pute with complaining witness, on being attacked by him,
shot complaining witness in the scuffle, would have been
guilty of murder if the victim had died and if the other ele-
ments of the crime were present; because the record con-
tained no evidence justifying a higher charge than man-
slaughter.

2. SAME—INTENT.

Nor was there sufficient evidence to support a conviction of
assault with intent to commit murder.

3. SAME—MALICE—HOMICIDE.

A charge that discharging a gun amongst a multitude of peo-
ple would warrant a conviction of murder, and that the law
would imply malice if a person poison another though no
particular enmity can be proved, or if he kill another sud-
denly without any or a considerable provocation, was erro-
neous and prejudicial to respondent who was charged with
having shot and injured a person in a room where several
were congregated.

4. SAME—CONFESSION—ADMISSIONS.

While respondent admitted to the police officers that he par-
ticipated in the affray, but claimed that he struck the in-
jured party with his revolver in self-defense, and the revol-
ver was accidentally discharged, it was not a confession and
should not have been so treated in charging the jury.

5. SAME—FLIGHT—EVIDENCE.

Respondent's flight from the scene of the shooting, and his ab-
sence for several weeks, was not substantive evidence of his
guilt.

6. SAME—CHARGE—BURDEN OF PROOF—DOUBT.

The trial court erred in instructing the jury that in order to
find respondent guilty of murder it must be shown "that he
shot the complaining witness with malice aforethought and
with intent to kill the complaining witness and the people

would also have to show that the killing was premeditated by the defendant, and you could not find the defendant guilty *if there was evidence to convince you beyond a reasonable doubt* that he did not premeditate the crime or that he did not intend to kill when the shots were fired;" although the charge was requested by respondent's attorney the error in putting the burden on the accused was not thereby cured.

Error to Kalamazoo; Knappen, J. Submitted June 23, 1911. (Docket No. 117.) Decided October 2, 1911.

Joseph Cismadija was convicted of assault with intent to commit the crime of murder. Reversed.

*Harry C. Howard,* for appellant.

*Franz C. Kuhn,* Attorney General, *George V. Weimer,* Prosecuting Attorney, and *Stephen H. Wattles,* Assistant Prosecuting Attorney, for the people.

Respondent was convicted of the crime of assault with intent to commit murder, and sentenced to imprisonment for a term of from eight to twenty years. He has now served upwards of one year of that term. Both the respondent and the complaining witness, Sam Goller, are Hungarians. It seems that a considerable number of this nationality reside in the city of Kalamazoo, being employed in the various manufacturing institutions there located. It is customary for the young or unmarried Hungarians to board at houses usually kept by one of their married countrymen. Goller and respondent each maintained such a boarding house, and the alleged crime was committed in the home of the former.

Respondent, upon the night in question, visited Goller's house at about 10 o'clock in the evening, in company with another man and his wife. Upon his arrival he was admitted to the living room, in which there were gathered at the time some eight or ten of Goller's boarders. Respondent was given a seat at the table and a bottle of beer. Goller was not in the room at the time, but entered

it shortly after, and demanded that those present should make less noise, saying, "If you don't keep still, you will get a licking." Respondent apparently believed the remark addressed to him, for he said to Goller, "You are mad at me." Goller denied this, whereupon respondent asked Goller for some beer. Goller refused, and a dispute arose between the two men as to whether respondent had paid for the beer he had already had. Finally Goller ordered respondent to leave his house. The witnesses for the people do not agree as to the answer respondent made to this command. One witness says he replied: "Don't be so crazy; I will go when I want to." Another says his answer was, "I will go out myself." All the witnesses for the people, however, agree that thereupon Goller assaulted the respondent, pushing him off the chair onto the floor, and thence into Goller's bedroom, which was separated from the living room by curtains only; that Goller seized the chair and pursued respondent, striking or pushing him with it. Respondent then drew a revolver, and in the mêlée which followed, the two men being within arm's length of each other and fighting, the weapon was discharged three times. One shot only took effect in Goller's elbow; the other two went wide. Respondent then left the house, gave his revolver to a friend upon the street, and left the city.

The shooting occurred on the night of April 24th, and respondent absented himself from Kalamazoo until May 17th, when he returned and voluntarily surrendered himself to the sheriff. Here he was examined in the presence of the sheriff, the prosecutor, and others, and admitted his implication in the row, but claimed that he had acted only in self-defense, and had used his revolver as a club only; the discharges being accidental. He further claimed that after Goller had knocked him off the chair into the bedroom his (Goller's) wife joined Goller in the assault.

BROOKE, J. (*after stating the facts*). Error is assigned upon rulings as to the admissibility of evidence

and upon the charge and refusals to charge. We will consider those only relating to the charge.

The learned trial judge premised his charge by a lengthy and correct definition of the major offense with which the respondent stood charged. He then added:

" I read this for the purpose of showing you that, under the particular charge in the information, that if death had ensued, if this man had died from the effect of the shots, and all the other ingredients of the crime were there, that the death of that man would have been murder and not manslaughter, as I will call your attention to later on."

It is, of course, true that, if the evidence in the case was such as to supply the necessary "ingredients" of murder, then, in the event of the death of the person assaulted, a murder has been committed. The difficulty with this instruction is that the record is, in our opinion, absolutely barren of evidence which would have supported a verdict of murder, in case Goller had died from the effects of his wound. Here was a wordy dispute over a trivial matter, followed by a sudden affray in which respondent was first violently assaulted by the complaining witness. Had death ensued under the circumstances disclosed by the record in this case, the greatest crime of which respondent could have been convicted would have been manslaughter. He was clearly entitled to defend himself against assault of Goller, who, after ordering him to leave, threw him to the floor and into his bedroom, instead of towards the outside exit, and attacked him with a chair. The only question in the case is whether respondent in defending himself used unnecessary and unlawful force. That he did so might be inferred from his use of a deadly weapon, but if this inference could properly be drawn by the jury there is still lacking in the case evidence of the necessary elements of the crime of which he stands convicted.

Again the court charged:

" Malice is either express or implied. Express malice is when one, with a sedate and deliberate mind and formed

design, doth kill another, which formed design is evidenced by external circumstances discovering that inward intention, as lying in wait, antecedent menaces, former grudges, and concerted schemes to do him some bodily harm. Neither shall he be guilty of a less crime who kills another in consequence of such a wilful act as shows him to be an enemy to mankind in general, as, going deliberately with a horse used to strike, or discharging a gun amongst a multitude of people. So, if a man resolve to kill the next person he meets, and do kill him, it is murder, although he knew him not, for it is universal malice. And it may be necessary here to observe that no provocation, however great, will extenuate or justify a homicide, where there is evidence of express malice. And in many cases where no malice is expressed or openly indicated the law will imply it. Thus, where a man wilfully poisons another, though no particular enmity can be proved. So if a man kill another suddenly, without any or without a considerable provocation, or if he kill an officer in the legal execution of his duty, or if, intending to do another felony, he undesignedly kill a man, in all these cases the law implies malice, and the offense is murder."

This is no doubt a correct exposition of the law in a case in which it could properly be applied, but its pertinence in the case at bar is not apprehended. It may be, too, as claimed by respondent's counsel, that the instruction that, "discharging a gun amongst a multitude of people" would afford the necessary implication of malice, misled the jury into believing that, merely because the gun was discharged in a room containing eight or ten people, the respondent must be convicted of the crime charged.

Error is assigned upon that part of the charge referring to the alleged confession of the respondent, made to the officers at the time of his voluntary surrender. We think the court erred in characterizing the statements there made as a confession. It is true respondent then admitted his participation in the affray, but he claimed to have acted in self-defense, and that the weapon was accidentally discharged. If true, and believed by the jury, he should

have been acquitted. In any view we may take of it, it was not a confession of guilt.

The court further charged:

"There has been evidence introduced to show that immediately after the trouble the respondent fled from the scene, and some time during the night departed and concealed himself for two weeks or more, and until such time as the evidence shows he voluntarily appeared at the jail and gave himself up. The court instructs you that you have a right to consider such flight and subsequent concealment of respondent as evidence of his guilt."

This was an erroneous instruction. Flight from the scene of a tragedy may be quite as consistent with innocence as with guilt. One, who in self-defense kills or maims another, may through ignorance of the law or through panic flee from the scene of his act, and yet be perfectly innocent. We think it would be a dangerous rule which would permit the jury to consider flight as substantive evidence of guilt.

The court charged further:

"The question is, If Sam Goller had been killed at the time of the alleged assault, would Joe Cismadija, the defendant, have been guilty of murder? In order to find him guilty of murder, the people would have to prove that he shot the complaining witness with malice aforethought, and with intent to kill the complaining witness, and the people would also have to show that the killing was premeditated by the defendant, and you could not find the defendant guilty if there was evidence to convince you beyond a reasonable doubt that he did not premeditate the crime, or that he did not intend to kill when the shots were fired by him."

This was an obvious error, as it placed the burden of proof upon the respondent to convince the jury beyond a reasonable doubt that he did not premeditate the crime. The language of the court was taken from a request prepared by respondent's counsel, but that fact does not cure the error. Respondent should not suffer for the legal mistakes of his counsel. The reprehensible habit of carrying

deadly weapons, which is too common with a certain class of our citizens, particularly those of foreign birth, is a fecund cause of trouble. To this habit respondent doubtless owes the plight in which he finds himself. Had he been unarmed, the affair would probably never have assumed a more serious aspect than simple assault and battery upon either side.

For the errors pointed out, the judgment is reversed, the respondent remanded to the custody of the sheriff of Kalamazoo county, and a new trial ordered.

BIRD, MOORE, McALVAY, and BLAIR, JJ., concurred.