(No. 32425—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES ROGERS, Plaintiff in Error.

*Opinion filed January 22, 1953.*

JAMES W. GRAY, of East St. Louis, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and RICHARD T. CARTER, State's Attorney, of East St. Louis, (R. V. GUSTIN, of East St. Louis, and HARRY L. PATE, of Tuscola, of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

Plaintiff in error, James Rogers, was jointly tried with one Clarence Hilliard in the circuit court of St. Clair County for the murder of Walter White. The jury found both defendants guilty of the crime and fixed the punishment of Hilliard at 50 years' imprisonment and that of Rogers at 25 years. Rogers alone prosecutes a writ of error here seeking a reversal of the sentence and judgment entered against him by the trial court upon the jury verdict.

The evidence offered on behalf of the People establishes that on May 28, 1951, at about 1:00 o'clock A.M., the body of Walter White, a bus-station attendant, was found in the station located at Fifth Street and Missouri Avenue in the city of East St. Louis. It was discovered by persons who came to the station to board a bus. White's death resulted from a gunshot wound in the chest, the bullet passing through his heart and the edge of his liver. The county coroner, who was also a physician and surgeon, removed a .25 caliber bullet from White's body. A search of the premises by police resulted in the discovery of an empty exploded .25 caliber cartridge case eight or ten feet from where the body lay. No other clues were discovered at the time and no arrests were made. The bullet and empty case were preserved by the police department.

On July 9, 1951, one George Glade was assaulted and shot in the abdomen by an assailant then unknown to Glade. The facts in connection with this assault show that Glade, who lived in a room behind a tavern located in East St. Louis, had just entered his room and turned on the light when he was confronted by an intruder already in the room. This man pointed a gun at Glade, announced he was about to shoot him, and proceeded to do so. Glade's assailant was only three or four feet away at the time. The light in the room was bright and Glade had a good view of his assailant. A .25 caliber bullet was removed from Glade's body and an empty exploded .25 caliber cart-

ridge case was found near the scene. Testimony of a member of the St. Louis police department connected with its crime laboratory, based on tests and enlarged photographs of the cartridge cases and bullets, was that the bullet which killed Walter White and the bullet taken from Glade were fired from the same gun. At the trial Glade, who survived the attack, positively identified Hilliard as the man who shot him. The gun from which the bullets were fired was never recovered.

After the shooting of Glade he was hospitalized and there were no further developments until the arrest of plaintiff in error, James Rogers, on July 18. His arrest was in connection with the burglary of a tavern at Tenth and Gaty Streets in the same city. He was found at or near the scene of this break-in and taken to the police station the same night, where he was held. On July 21 Clarence Hilliard was arrested in connection with the assault on Glade, apparently because of statements made to the police by Rogers who was still confined in jail. Shortly after his arrest Hilliard was taken to the hospital where he was identified by Glade as the man who shot him. On July 25, 1951, Rogers made a written statement to the police in connection with the killing of Walter White. On the following day Hilliard made a written statement in the same connection. The contents of these written statements or confessions do not appear in the record. The trial judge, after a full hearing in chambers, ruled that these statements were inadmissible because not voluntarily given. The evidence produced at this hearing before the court out of the presence of the jury appears in the record and will be discussed later.

On July 25, the same day he gave the written statement, plaintiff in error was taken by police officers to the bus station where White was killed. At the trial these officers were allowed to testify, over objection, that Rogers, while with them at the bus depot, "re-enacted the killing;" that

he showed them how Hilliard had entered the station while he stood outside as a "lookout;" that Hilliard had shot the man inside and had taken money from the till which he and plaintiff in error later divided. The testimony of the officers details what Rogers told them concerning the hold-up and killing of White. It appears that this verbal account was given to the officers just prior to the signing of the written statement which was ruled inadmissible by the trial judge.

The trial court also admitted over objection the testimony of two newspaper reporters which concerned verbal statements made to them by Hilliard at the police station, one outside of the presence of Rogers and the other in Rogers's presence on the following day. This testimony was to the effect that Hilliard had admitted to them that he shot White. Both reporters agree that on the occasion when plaintiff in error was present he said nothing and only one of the reporters, Bogard by name, recalled that Hilliard made any statement involving Rogers on either occasion.

Neither defendant testified in his own behalf before the jury. At the close of all the evidence counsel for plaintiff in error made a motion for a directed verdict which was denied. Counsel also made a motion to exclude the oral confession of Rogers as testified to by the police officers on the ground that there had been no preliminary hearing to determine whether or not the statements had been voluntarily given. Counsel offered to produce evidence that the verbal statements or confessions had been obtained by violence and coercion. The motion and offer of proof were denied by the court. A motion for a new trial was also overruled.

Since the principal objection made by plaintiff in error relates to the admission of the testimony concerning his actions and statements in "re-enacting" the commission of the crime, we shall deal first with that question. It must

be remembered that this was an occurrence on July 25, the same date the written statement ruled inadmissible by the trial court was taken from plaintiff in error. In the hearing before the court upon the question of the admissibility of the written confessions, both defendants testified along with a number of other witnesses. Plaintiff in error testified that he was arrested by the police on July 18 in the city of East St. Louis on suspicion of being involved in a burglary that had occurred in a building located at Tenth and Gaty streets. He was first taken by the police to the building at Tenth and Gaty where the police told a lady there that they had "got the burglar." He was then taken to the city jail where he was held continuously from July 18 to July 28 when he was taken to the county jail at Belleville. It appears that he was not taken before a magistrate or formally charged with the commission of any crime until July 28. During this entire ten-day period plaintiff in error, though questioned repeatedly, had no benefit of counsel. It appears that except for seeing some newspaper reporters he had no contacts with anyone else during the time except members of the police department. These facts gathered from the testimony of the plaintiff in error were not denied by the police.

Rogers also testified that he was beaten by members of the police department on at least three occasions, one of which was on the same date that he signed the written statement and went with the officers to the bus station to "re-enact" the crime. On two occasions he stated he was stripped naked, placed across the desk in the interrogation room and beaten on the back with a rubber hose while one officer held his hands and another his feet. He was able to name the officer who held his hands and the officer who did the beating. One of these sessions lasted about 25 minutes. Plaintiff in error further testified he was told by a police officer that he "might as well come clean because he would beat the hell out of him." On another occasion

560

plaintiff in error, though not beaten, was threatened with a blackjack and told "if he knew better he had better tell what happened." Plaintiff in error further testified that on the fourth day of his confinement a police officer came to his cell in the nighttime singing "the more we get together the happier we will be." At this time plaintiff in error was taken from his cell and brought before a lieutenant of the police department who said he might as well tell them where the gun was—that they had all the evidence anyway. At this time the police threatened to beat him again. Rogers testified that the night he was taken to the bus station the officers "showed him how the crime was committed" and then brought him back from the bus station and beat him before he admitted it. He testified that he signed the statement to escape further beatings.

Clarence Hilliard, Rogers's codefendant, also told of repeated beatings in the hearing before the court. He testified that he was arrested on July 21 while standing near the courthouse steps; that he was taken to the East St. Louis jail where he was held until July 28 when he was first taken before a magistrate and from there to the county jail at Belleville. During the period of his confinement in the East St. Louis jail, Hilliard testified that he was repeatedly threatened and beaten, detailing the occasions. He testified that on Tuesday night he was stripped naked and seriously beaten by the officers with a rubber hose and fan belt; that plaintiff in error was then brought in and told that the same thing would happen to him. Hilliard testified that he finally signed the confession and made the statements because he was afraid they would kill him as they had often threatened to do.

The testimony of Rogers and Hilliard as to these acts of violence on the part of the police is strongly corroborated by the testimony of two physicians, an assistant State's Attorney and two men who were inmates of the city jail at the time Hilliard and Rogers were confined there. Dr.

Vincent Eisle testified that he examined Rogers in the county jail at Belleville on August 1. He found ten or twelve scars on Rogers's back, buttocks and thighs which had apparently resulted from blows inflicted with a blunt instrument 7 to 10 days previously. Dr. Roy W. Kenney examined both Rogers and Hilliard at the county jail on July 30. The physician found scars on Rogers's back and right buttock and evidence of trauma to the right thigh. On Hilliard he found evidence of similar injuries. He expressed the opinion that the marks on the men were caused by blows from a blunt instrument and were of recent origin. This examination was made in the presence of members of the police department and a reporter. The doctor testified that both defendants stated to him in the presence of the police and the reporter that their wounds had been caused by blows inflicted by the police; that the police officers present made no comment or statement.

Dupree Davis, an assistant State's Attorney, testified that he had seen Rogers and Hilliard at the preliminary hearing before the magistrate on July 28; that Hilliard complained to him that he had been beaten by the police officers and that he saw marks or scars on Hilliard's head. The witness further testified on cross-examination that he made a report to a superior in an effort to find out where Hilliard got the marks, and that one of the officers, Lieutenant Polk, said to him, "Davis, I think you are my friend and I hear you went to Mr. Beebe." The assistant State's Attorney further testified that Lieutenant Polk told him "I beat them a little."

Elbert Scott and James Robinson who were inmates of the city jail at the time of Rogers's confinement testified for the defendants. Scott testified that he shared a cell with plaintiff in error; that he saw Rogers taken from his cell and when he returned Rogers showed witness the welts on his body; that this occurred several times. Witness also testified that while Rogers was absent from the cell on

these occasions he heard cries which "sounded like James Rogers." Scott further testified that Rogers finally asked him on July 25 what he should do, and that he advised Rogers he had better sign up before they beat him to death. James Robinson testified that the defendants were beaten every night after 12 :00 o'clock; that plaintiff in error was beaten until he could not sit down; that his nose was bleeding and he had welts on his body.

Harry Littrell, a deputy sheriff, called by the State, admitted that he found scars on Rogers's legs when he examined him in the county jail at the time of the trial. Photographs which had been taken of Rogers and Hilliard at the time of their examination by the physicians were introduced at the hearing before the court.

The evidence offered by the State in support of the reliability of the confessions included the testimony of police officers and reporters. Five police officers, including Lieutenant Polk, testified in substance that they were present when the written statements were signed by each defendant; that the defendants had not been beaten at any time and that no promises were made. None of the officers denied that defendants had been repeatedly questioned for long periods of time during their confinement. In fact, one officer, William Johnson, on being asked how long they were questioned said "for hours." At another point in his testimony Johnson says "it went on for two days." The fact that these defendants were not taken before a magistrate until after the signed confessions had been obtained stands undisputed.

Wippold and Bogard, the same newspaper reporters who later testified to the verbal confession of Hilliard, testified that they were present when the written statements were given; that at this time both defendants were stripped to the waist and that they saw their bodies. Wippold first testified that he saw no marks. He later admitted that he saw the marks on Rogers but thought they were old

marks. Bogard testified that neither Rogers nor Hilliard complained of being beaten but he remembers that "Hilliard was afraid to speak out in front of the police." He stated that he saw no marks on the men when they were stripped to the waist. He was then asked: "Is it possible you missed them?" He replied, "No, Mr. Wippold saw them. Mr. Wippold was there at night."

The foregoing testimony, viewed in its entirety, clearly shows that the trial court was correct in ruling out the questioned written confessions. Though a confession is recognized as evidence of the highest type it can be received only when it has been freely and voluntarily given, and the burden is always upon the State to prove by a preponderance of the evidence at a hearing out of the jury's presence that the purported confession is free from the taint of unreliability because of promises, intimidation or coercion. A prisoner is deprived of due process of law when a confession of guilt is obtained from him by force, violence, brutality, incessant and prolonged questioning, unlawful confinement for an unreasonable length of time, or by any of the methods commonly known as the third degree. (*Brown* v. *Mississippi,* 297 U.S. 278; *Ashcraft* v. *Tennessee,* 327 U.S. 274; *McNabb* v. *United States,* 318 U.S. 332.) This court has frequently spoken out in support of the above principles. *People* v. *Rogers,* 303 Ill. 578; *People* v. *Davis,* 399 Ill. 265; *People* v. *Thomlison,* 400 Ill. 555; *People* v. *Weber,* 401 Ill. 584; *People* v. *Sloss,* 412 Ill. 61.

While the trial court refused to allow the written confessions to go to the jury, it permitted the testimony of the police officers, which detailed Rogers's re-enactment of the crime and his verbal statements made at that time, to be received without any preliminary inquiry. We repeat that this re-enactment with its accompanying statements took place on July 25—the same date the written statement was taken from plaintiff in error and at a time just prior

to the taking of that statement. The trial court evidently felt that the testimony as to the happenings at the bus station with the accompanying statements attributed to plaintiff in error amounted only to exculpatory statements or admissions from which guilt might be inferred. With this we cannot agree. The actions and statements attributed to plaintiff in error at the bus station amounted to an ultimate confession of guilt detailing his participation in the crime charged. It could have no other meaning than that plaintiff in error was declaring his guilt of the offense of murder for which he was on trial. While exculpatory statements merely raising an inference of guilt do not require proof of their voluntary origin before being admitted in evidence, confessions do require such proof, and the distinction between a mere admission and a confession is that the latter contains a statement showing the actual participation or agency while the former includes any statements or conduct from which guilt may be inferred but does not necessarily follow. *People* v. *Wynekoop,* 359 Ill. 124.

It was, therefore, incumbent upon the court to scrutinize carefully the circumstances under which the verbal statements were given and to require preliminary proof concerning their voluntary character. Had this been done the court would have had before it the same evidence adduced upon the hearing as to the reliability of the written statements. It would have appeared that the verbal statement was given after prolonged unlawful incarceration, during which time threats, force and violence had been used to break down the will of plaintiff in error. The verbal statements attributed to the plaintiff in error being given at the same time as the written statement are subject to the same doubt as to their reliability. Moreover, this court has repeatedly observed that the coercion which renders a purported confession inadmissible may not necessarily be that which takes place at the time the confession is made. A confession apparently voluntary may be rendered

inadmissible by violence, threats, promises or coercion which took place at another time while the defendant was in custody under charge or suspicion of the same offense. *People* v. *Sweetin,* 325 Ill. 245; *People* v. *Thomlison,* 400 Ill. 555; *People* v. *Sloss,* 412 Ill. 61.

What has been said of the purported verbal statements of plaintiff in error applies as well to the purported oral confessions of his codefendant, Hilliard, one of which involved plaintiff in error. These oral statements of Hilliard were made at about the same time as the written one. They were made in the presence of the same persons. The only observable difference, if indeed it is a difference, is that the written statements appear to have been given to the police with the reporters present while the verbal ones seem to have been given to the reporters with the police present. These purported confessions, verbal or written, could not be purged of their unreliable character solely by the testimony of all the police officers involved that these men had not been beaten. Where, as in this case, there is convincing evidence from observed physical condition strongly corroborating the testimony of the defendants that they were mistreated, the court should not deem itself bound by the testimony of the officers alone but should take into consideration all the facts and circumstances surrounding the giving of the alleged confession. (*People* v. *Thomlison,* 400 Ill. 555.) The court committed serious prejudicial error in admitting the evidence of the purported verbal statements of both plaintiff in error and his codefendant, Clarence Hilliard.

The court has on so many occasions condemned such practices by police officers as are here revealed that we would have expected that such methods should by now have been abandoned in solving crimes. We say that it is a dangerous practice to allow the police to arrest a man upon mere suspicion that he has committed a crime and for days subject him to a sweating process and to violence until he finally gives up and confesses in order to escape the torture

to which he is being subjected. The guilt or innocence of such a suspect would necessarily be determined by the first guess of the police as to who was the real criminal, and if the police made a mistake, conviction of innocent men would necessarily result from such practice. While it is true that plaintiff in error may be guilty, the law does not provide one method for trying innocent persons and another for trying guilty persons, as everyone charged with crime is presumed to be innocent until proved guilty beyond reasonable doubt, according to the established methods of procedure, which include, *inter alia,* the reception of only competent, trustworthy and reliable evidence. In the case before us the only evidence to connect Rogers with the murder was his purported confession and the confession of Hilliard. His conviction upon such evidence cannot be allowed to stand.

Plaintiff in error also complains that the court erred in refusing his motion for a separate trial. Since the motion is not set forth in the abstract of record, we are not required to pass upon it here.

Plaintiff in error further contends that error was committed in permitting the introduction of evidence concerning the shooting of Glade, because it is evidence of a separate and unrelated crime. It is well settled that while proof of the commission of a separate crime is not to be received to the prejudice of a defendant, evidence which proves or tends to prove the offense charged and which is relevant to the issues is competent notwithstanding the fact that it may disclose the commission of other crimes. (*People* v. *Botulinski,* 392 Ill. 212.) The ultimate test of admissibility of evidence is whether it fairly tends to prove the particular offense charged. The evidence concerning the shooting of Glade would be competent against Hilliard in the murder case and might be competent against Rogers himself if his connection, if any, with the shooting of Glade were established. From the record now before us it appears that the

only evidence to connect Rogers with the assault on Glade consists of the purported confessions made by Hilliard and Rogers while under arrest.

Plaintiff in error's objection to a given instruction has not been properly preserved because the instructions as a whole have not been set forth in the abstract of record. The other assignments of error need not be discussed.

The conviction of the plaintiff in error and his sentence to the Illinois State Penitentiary are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*