STATE V. MARY LOUISE BROWN.

(*October* 1, 1953.)

RICHARDS, P. J., TERRY and CAREY, J. J., sitting.

*David B. Coxe, Jr.,* for defendant.

*Vincent A. Theisen,* Chief Deputy Attorney-General, for the State.

Superior Court for New Castle County, Indictment for Murder in the First Degree, Criminal Action No. 29, September Term, 1952.

RICHARDS, P. J.:

It has long been the practice in this State, for attorneys engaged in the trial of a case, in the course of their remarks to

the jury, to not only discuss the facts but to refer to the law applicable thereto. This is particularly true in the trial of criminal cases, during which the Attorney General while addressing the jury often defines the crime for which the defendant is charged and discusses the different elements of it.

While Mr. Theisen was arguing the case before the jury he made certain statements concerning the crime for which the defendant was indicted and for which she was being tried. He started by saying: "What is murder in the first degree? Under our law, and as the Court will charge you", he then proceeded to state, in his own language, what the State was required to prove in murder of the first degree and murder of the second degree. He next called attention to the distinction between murder of the first and murder of the second degree. This was followed by a definition of malice with an explanation of express malice and the manner in which it can be shown.

Again, in his closing remarks to the jury, the Deputy Attorney General commented upon what constituted self-defense, including the amount of force which a person is justified in using, the duty to retreat and the duty to rely upon the help of other people available, who are able to assist and who have done so before. These remarks were objected to by the Attorney for the defendant on the ground that they amounted to charging the jury on the law and were prejudicial to the defendant.

The said attorney did not ask for and obtain a ruling of the Court on his objections, however, and note an exception to the ruling if adverse to him.

Prior to the adoption of the new criminal rules which do not apply to this case, the established practice in this State in the trial of both civil and criminal cases, was for attorneys to make their objection to questions asked witnesses or statements by counsel in their argument before the jury; and note their exception to an adverse ruling of the court.

This course not having been taken, the defendant cannot rely upon these remarks made by the Deputy Attorney Gen-

eral, which he contends were prejudicial to the defendant, as the basis of reasons for a new trial.

The second assignment of error is based upon the paper writing signed by the defendant, which was introduced in evidence, which the defendant contends the Court erroneously referred to in the charge as a confession and that such reference was prejudicial to her.

The paper writing signed by the defendant which was introduced in evidence, was before the jury for its consideration together with all of the other evidence in the case. It was not referred to by the Court in the charge or designated in any way. The jury was at liberty to treat it as a confession or statement or give it such interpretation as it thought applicable to it.

The Court did charge the jury on confessions in language which has frequently been used in this State for that purpose. The following pertinent language is included in that portion of the charge; "The degree of credit due to it is to be estimated by the jury under the circumstances of the particular case".

What constitutes a confession is something upon which a difference of opinion is found to exist. Many decisions can be found in which the Court determined what amounted to a confession with the language used under circumstances of that particular case.

Any admission by a party charged with an act or liability, in relation to such act or liability, amounts to a confession. *Webster's New International Dictionary.*

An examination of the paper writing admitted in evidence discloses that the defendant made the following answers to questions which were asked her: "Do you make this statement knowing that your husband John W. Brown is dead and that you have been charged with his murder? Yes; After all of you went in the house, was there any trouble between you and your husband? Yes, we were still arguing, and my husband and I went

up to our bedroom as he said he wanted his damn money. I opened the cedar chest and gave him his money, he then started to leave the room, and I said something to him, I don't remember what it was, he turned around and said I'll kill you, and the man I know as 'T' grabbed him, I was standing on the other side of the bed at this time, and reached down under the bureau where I kept a 38 revolver and I took it out and as my husband was coming back in the room through the door, I pointed the gun at him and shot it, I missed him and I don't know where the bullet went. He kept on walking toward me around the foot of the bed, and when he was at the foot of the bed I fired the gun again at him, and my husband fell on the cedar chest. After I saw that I had shot him I said, I'm sorry, I'm sorry, I'm sorry this had to happen. He then got up and I could see the blood and he staggered out the door and fell again. When the police arrived did you tell them you had shot your husband? Yes."

■ We are convinced that the language above quoted amounts to a confession that she killed her husband, and that the reference made in the charge to confessions was not prejudicial to the defendant.

For the reasons above set forth the motion for a new trial is denied.