MARY LOUISE BROWN, Defendant Below, Appellant, v. STATE OF DELAWARE, Plantiff Below, Appellee.

(*May* 26, 1954.)

SOUTHERLAND, C. J., WOLCOTT and TUNNELL, J. J., sitting.

*David B. Coxe, Jr.,* for appellant.

*Stephen E. Hamilton, Jr.,* Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, No. 5, 1954.

WOLCOTT, J. (Delivering the opinion of the majority of the Court):

The appellant was indicted at the September Term, 1952 in New Castle County for murder in the first degree. She was tried in October of that year and found guilty of murder in the second degree. A motion for a new trial was made which was denied by the Superior Court on October 1, 1953, 99 *A.* 2d 501, and the defendant was sentenced to life imprisonment. From

her conviction she now appeals. The reason for the delay of approximately one year between conviction and sentence does not appear.

The appellant in her brief urges the following points as reasons for the reversal of her conviction:

(1) That the Deputy Attorney General in arguing to the jury stated the applicable principles of law in such fashion as to confuse the jury to the prejudice of the appellant.

(2) That the Court in charging the jury erroneously characterized a certain written statement as a confession and thus prejudiced the appellant in further instructing the jury as to the evidential weight to be given the purported confession.

We will consider the questions raised by the appellant in the order in which we have stated them.

The remarks addressed to the jury by the Deputy Attorney General, of which the appellant complains, were a purported explanation of the difference between express malice required to support a verdict of murder in the first degree, and implied malice required to support a verdict of murder in the second degree. In addition, appellant complains of the prosecutor's statement of the law of self-defense.

Appellant argues that the distinction between express and implied malice made by the Deputy Attorney General was contrary to the law as laid down by this court in *Bantum v. State*, 7 *Terry* 487, 85 *A.* 2d 741. For the purpose of disposing of this argument, we will assume, without deciding, that the appellant's view of the prosecutor's remarks is correct.

The confusion in the mind of the jury, if any there was, resulted from statements as to the elements of express malice, and from the prosecutor's attempt to equate those elements to the particular facts of this case. As such, the statements related to the issue of murder in the first degree. The verdict reached by the jury of guilty of murder in the second degree amounts

to an acquittal of the appellant of the larger crime. Such acquittal cured any errors relating to the issue of murder in the first degree. *Powell v. State,* 7 *Terry* 551, 86 *A.* 2d 371.

The appellant also argues under her first point that the statement of the Deputy Attorney General to the jury purporting to state the law with respect to self-defense was erroneous, and therefore prejudicial. The particular statement under attack was that an assaulted person must rely for help upon others present before using force in his own defense. Assuming that the appellant is correct in her view as to the law of self-defense, it does not follow that this statement of the prosecutor constitutes reversible error. This is so because, not having objected to the statement at the trial, the appellant may not urge the objection upon appeal, and for the further reason that the full and correct exposition of the law of self-defense contained in the court's charge to the jury sufficiently removed any confusion that might have been caused in the mind of the jury.

We think, therefore, that the appellant's first point does not require a reversal of the conviction.

The second reason advanced by the appellant for a reversal of her conviction is that the court, in charging the jury, included the usual charge with respect to a confession of guilt. Briefly, the charge in this respect instructed the jury that a confession to be received in evidence must have been made voluntarily; that if it is reduced to writing it should be regarded as strong and convincing evidence; that the degree of credit to be given it is, nevertheless, to be decided by the jury; that the jury may accept portions and reject other portions as it sees fit; and that the jury is at liberty to judge of a confession from all the proven circumstances of the case.

The appellant contends that there was only one written statement introduced in evidence and that, therefore, the charge of the court could have had reference solely to this written statement. This being so, the appellant argues, she was prejudiced in the mind of the jury by the characterization of the writing by

the court as a confession, since it was in fact not a confession but an exculpatory statement made by the appellant in justification of the homicide. The appellant, in support of the argument that the erroneous designation of a statement as a confession amounts to reversible error, cites the following authorities. *Pressley v. State,* 201 *Ga.* 267, 39 *S. E.* 2d 478; *Richardson v. State,* 47 *Ga.* 138, 169 *S. E.* 770; *Ransom v. State,* 2 *Ga. App.* 826, 59 *S. E.* 101; *People v. Sovetsky,* 323 *Ill.* 133, 153 *N. E.* 615; *People v. Spranger,* 314 *Ill.* 602, 145 *N. E.* 706; *People v. Stapleton,* 300 *Ill.* 471, 133 *N. E.* 224; and 23 *C. J. S.,* Criminal Law, § 1236.

We think that the appellant is correct in arguing that the court's charge with respect to confessions could well have caused the jury to assume from it that the written statement of the appellant introduced in evidence was regarded by the court as a confession and, as such, possibly entitled to special weight and consideration.

A confession is an express acknowledgment by a defendant of his guilt of the crime with which he is charged, or an acknowledgement by him of facts sufficient of themselves to establish the ultimate fact of guilt. 2 *Wharton's Criminal Evidence,* (11th Ed.), § 580; 20 *Am. Jur.,* Evidence, § 478; *State v. Donato,* 106 *N. J. L.* 397, 148 *A.* 776; *Brown v. State,* 83 *Ga. App.* 650, 64 *S. E.* 2d 313; *Delnegro v. State,* 198 *Md.* 80, 81 *A.* 2d 241; *People v. Rogers,* 413 *Ill.* 554, 110 *N. E.* 2d 201. To be admissible in evidence, a confession, in contradistinction to a mere admission, must be proved to have been made by the defendant voluntarily, and not by reason of any inducement or threats. 4 *Wigmore on Evidence,* (3rd Ed.), § 1050; *Underhill, Criminal Evidence,* (4th Ed.), § 265. A statement by a defendant containing admission of facts which together constitute proof of the commission of the homicide charged is a confession and admissible in evidence as such, even though additional facts are asserted in the statement by way of justification of the crime, if the additional facts are insufficient as a matter of law to estab-

lish a defense. *Daniel v. State,* 187 *Ga.* 411, 1 *S. E.* 2d 6; *Jones v. State,* 130 *Ga.* 274, 60 *S. E.* 840; *Moore v. State,* 220 *Wis.* 404, 265 *N. W.* 101; *McCloud v. State,* 166 *Ga.* 436, 143 *S. E.* 558; *State v. Porter,* 32 *Or.* 135, 49 *P.* 964. It, of course follows that a statement which admits the commission of the act charged, but which also gives a legal justification or excuse, is not a confession. *State v. Crowder,* 41 *Kan.* 101, 21 *P.* 208; *State v. Picton,* 51 *La. Ann.* 624, 25 *So.* 375.

With the foregoing statement of the applicable rules of law in mind, we now turn to the appellant's statement, which the State contends is a confession, but which the appellant contends is an exculpatory statement. There is no question but that the statement was made voluntarily.

The appellant's statement is written in question and answer form, the questions being typed by a police officer when they were asked, and the answers being typed by the same officer when they were given. The appellant authenticated it by making her mark upon it after it was read back to her. In substance, the following factual narrative appears from the written statement:

The appellant and the deceased had been married for eleven years and lived together at 709 Pine Street, Wilmington, in a house owned by them. On May 29, 1952, the appellant took the car, owned by herself and her husband, and, in the company of a niece and two men, made several trips and stops in the course of several hours, drinking a substantial amount of whiskey. The appellant finally parked at an early hour in the morning of May 30th in front of 715 Church Street, Wilmington, where she was discovered by her husband, the deceased. An argument followed in the course of which the deceased drew a knife and threatened to kill the appellant. He was dissuaded by a companion and drove the car back to 709 Pine Street.

At this locality, the argument continued, with the deceased demanding that the appellant give him his money. The appellant and the deceased went upstairs to their bedroom, where the appellant gave the deceased his money. As the deceased

started to leave the room, the appellant said something to him, the nature of which she does not remember, and he turned around and threatened her life. At this, the appellant standing on the other side of the bed obtained a revolver she kept under a bureau, and shot at the deceased, missing him. The deceased kept walking toward the appellant around the foot of the bed. She fired again and the deceased fell, got up and staggered out of the bedroom to the hall where he again fell.

The appellant in her statement said that she was afraid of the deceased because she knew that he was a knifewielder, but she stated that as he approached her at the time of the shooting she did not see a knife or anything else in the deceased's hand. She also stated that she and the deceased had been having a lot of trouble for about eight years.[1]

The appellant now contends that the foregoing is not a confession but in fact was an exculpatory statement which could not be characterized by the trial court as a confession without prejudice to the appellant.

It is to be observed that in her statement the appellant admitted killing her husband with a deadly weapon. In the absence of other circumstances of an exculpatory nature, this admission would be a confession of guilt of second degree murder. *Bantum v. State*, 7 ,Terry 487, 85 *A.* 2d 741. The appellant, however, argues that exculpatory matter is contained in the statement and that, accordingly, it is not a confession entitled to great weight and consideration by the jury.

The burden of appellant's argument in this respect is that she purported to explain away the criminal nature of the killing by showing that she killed in self-defense. Self-defense is of course a valid defense to a charge of felonious homicide, but when relied on the defendant must bear the burden of proof. *State v. Stevenson*, 8 *W. W. Harr.* 105, 188 *A.* 750.

---

[1]The narrative of facts set out appears solely from the appellant's statement to the police. As a part of its case the State produced numerous witnesses who testified to different versions of the same circumstances.

 Looking at the appellant's statement in the light most favorable to her, it would appear that after an earlier argument the appellant and the deceased continued that argument in their bedroom; that at his demand she gave him money belonging to him, and that as he started to leave the room she said something to him which caused him to turn around, threaten her life, and walk back into the room. Upon the provocation of the threat and his re-entry into the room, the appellant shot him. There is nothing in the statement which would indicate that the deceased was about to make an assault on the appellant, or that he had any weapon with which to carry out his threat. Indeed, as far as the appellant was aware, the deceased was unarmed.

We think these facts fall far short of justifying the killing as an act of self-defense. It would appear that the deceased was departing when his return was provoked by some remark of unknown nature made by the appellant. His approach toward the appellant was at a walk, not a rush, as would be expected from one contemplating an assault upon another. As far as is disclosed, the deceased had no weapon. There was, therefore, we think, nothing in the deceased's actions calculated to put the appellant in fear of her life. Her use of a deadly weapon to repel the deceased was the use by her of excessive force. When such is the case, the killing cannot be justified as an act of self-defense. *State v. Stevenson*, 8 *W. W. Harr.* 105, 188 *A.* 750; *State v. Rhodes, Houst. Cr. Cas.* 476.

We think, therefore, that the written statement of the appellant amounts in law to an admission of facts which, taken together constitute an admission of guilt of at least the crime of murder in the second degree. As such, it is a confession and was properly so designated by the court in its charge to the jury. It may be fairly debatable whether it may be regarded as a confession of murder in the first degree, but the appellant has been acquitted of that charge.

For the foregoing reasons, the conviction below is affirmed.

TUNNELL, Justice (dissenting):

Being of the opinion that the Superior Court trespassed upon the constitutional rights of defendant, and did so in respect to a vital issue of the case, I cannot but conclude that the former trial was thereby tainted and that defendant is entitled to a new one. My reasons follow.

On the day after the homicide, a policeman questioned defendant, an illiterate colored woman, typing out his questions and her answers as they went along. The transcript of this interrogation occupies eleven pages of the record before us and is too long to copy into the margin, but a summary of some of the features in it favorable to defendant will suffice for present purposes.

Defendant therein stated that she and her husband, the deceased, had been getting along badly for about eight years; that on the night before the shooting she had been out all night with another man, drinking and carousing; that in the morning her husband and two friends of his encountered her in front of the home of her companion of the night before; that her husband then and there "drawed a knife on" her and said "I am going to cut your throat; I am going to kill you"; that her husband, however, on that occasion was restrained by one of his companions from carrying out his threat; that her husband at once drove her in their car to their home nearby; that what immediately thereafter took place, in her own language, was this:

"Yes, we were still arguing, and my husband and I went up to our bedroom as he wanted his 'damn money'. I opened the cedar chest and gave him his money. He then started to leave the room and I said something to him—I don't remember what it was—he turned around and said: 'I will kill you,' and the man I know as 'T' grabbed him. I was standing on the other side of the bed at this time, and I reached down under the bureau where I kept a .38 revolver and I took it out, and as my husband was coming back through the door, I pointed the gun at him and shot it. I missed him, and I don't know where the

bullet went. He kept on walking towards me around the foot of the bed, and when he was at the foot of the bed I fired the gun again at him, and my husband fell on the cedar chest. After I saw that I had shot him, I said: 'I am sorry, I am sorry, I am sorry this had to happen;' "

In response to a later question, defendant insisted that she had not reached for the gun under the bureau until after her husband had said, "I will kill you." Replying to another question, she said, "I always feared my husband as this wasn't the first time he drawed a knife on me."

In its charge to the jury, the court repeated the language in respect to a "confession of guilt reduced to writing" which is set out in the report of *State v. Brinte*, 4 *Penn.* 551, 565, 58 *A.* 258. As there was no other paperwriting in evidence except this statement, the jury could have drawn no inference from what the court said in that portion of the charge except that the court considered this written statement by the defendant to be a confession of guilt.

What is murder, and the differences between degrees of murder, are in this jurisdiction highly technical questions, not easy for a trained legal mind to grasp, and, of course, much harder to explain in simple language to a jury. Compare comments in *Bantum v. State*, 7 *Terry* 487, 85 *A.* 2d 741, 750. But everyone knows what is meant by a "confession" or "a confession of guilt". Since this was an indictment for murder, it therefore follows that whatever uncertainty the jurors might have entertained about the definition of murder, they could reasonably conclude that they knew at least this, that the court considered defendant's statement to make out a case of it and, consequently that if the statement should be believed in its entirety, the proper verdict would be "guilty".

My own view of the matter is quite the antithesis of the inference which logically follows from the Superior Court's having charged on confessions. I consider that the grim picture por-

trayed by this statement was doubtless designed to be, and if accepted *verbatim* actually was, exculpatory in nature.

Here was a woman against a man, a man who had just brandished his knife and threatened to cut the woman's throat. Presumably, he still had the knife,[1] for there is no suggestion that he had disposed of it or that any one had taken it away from him. This was a man whose violent impulses the woman had long feared, and, indeed, had freshly inflamed by her own improper conduct. There she was, in an upstairs room, with him between her and the exit. Coming toward her, undeterred by a third party's futile attempt to restrain him, he declared his intention to kill her. She reached for a gun and shot at him. Even being shot at did not stop or turn him; he stalked on. She shot at him a second time, this time finding the mark.

Is this necessarily murder? On the contrary, this statement, when taken alone, to my mind makes out a case of self-defense.

The jury, of course could ultimately construe this statement as they found a study of all the evidence in the case to require. They could not convert it into a confession, however, without discrediting something in it, or construing something against defendant which was susceptible of a construction in her favor, or introducing into it new facts which would throw a different light upon it.

But to do this weighing, rejecting, substituting, and revising, and thus to reach conclusions on disputed issues of fact, in this state is the *exclusive prerogative of the jury*. Article 4, Sec. 19, of the constitution forbids judges in jury trials to comment on the weight or credibility of the evidence; they are permitted only to "state the questions of fact in issue and declare the law." This is the constitutional admonition which I believe was violated. The fact that the judicial slip was of a species most easily made, and may very well have been inadvertent, takes nothing away from its effect.

---

[1] A knife was in fact found by the body and introduced in evidence.

Questions have often been raised as to whether the error resulting from such a comment as the instant one is prejudicial. It is not surprising to find common agreement among courts that it is, for it has an obvious and direct bearing upon the nature of the verdict.

The points with which we are here concerned were well discussed by Chief Justice Bleckley, speaking for the Supreme Court of Georgia, in *Fletcher v. State*, 90 *Ga.* 468, 17 *S. E.* 100, 101, where he said:

"The accused made no confession of guilt, nor did he intend to make any. * * *. It is evident that the declarations were made with an exculpatory object, but, of course, they might have had an inculpatory effect. This would depend upon the view which the jury might take of them in connection with all other facts and circumstances disclosed by the evidence. The court, overlooking the distinction between confessions of guilt and admission of mere evidentiary facts not necessarily inconsistent with innocence, erred in charging anything whatever on confessions of guilt. There was no evidence on which to base that element of the charge. What the court said to the jury on the subject was well calculated to prejudice the prisoner, for it might have induced the jury to think that the declarations shown to have been made by him could be treated, not only as a part of the material from which an inference of guilt might be drawn, but as a confession of guilt, direct or indirect, made by himself. There is a very wide distinction between admitting the main fact and admitting some minor or subordinate fact or series of facts which could be true whether the main fact existed or not. This distinction has been pointed out at least twice by this court, and frequently by other courts. *Dumas v. State*, 63 *Ga.* 600; *Covington v. State*, 79 *Ga.* 687, 7 *S. E.* 153; *People v. Strong*, 30 *Cal.* 151; *People v. Parton*, 49 *Cal.* 632; *People v. Velarde*, 59 *Cal.* 457; *State v. Knowles*, 48 *Iowa* 598; and see 1 *Greenl. Ev.* § 170."

Similar statements and rulings have been made by the courts of last resort of many states other than Georgia and other than those covered by the above citations in the Georgia opin-

ion. Typical are *State v. Heidenreich*, 29 *Or.* 381, 45 *P.* 755; *People v. Cismadija*, 167 *Mich.* 210, 132 *N. W.* 489; *Ledbetter v. State*, 61 *Miss.* 22; and *People v. Sovetsky*, 323 *Ill.* 133, 153 *N. E.* 615. And there is a virtually inexhaustible list of authorities to the same effect in 8A *Words and Phrases*, Confession, pp. 45-61.

The several factual findings made by the majority of this court, (1), that because deceased was approaching defendant only at a walk, he was, therefore, not contemplating assault, (2), that deceased possessed no weapon, (3), that the conduct of deceased was not calculated to put defendant in fear of her life, and (4), that defendant's use of a deadly weapon was under the circumstances a use of excessive force, all seem to me to be decisions of what are properly jury questions. This is to be expected if the theory of this dissent is right. It is only natural that a process of reasoning sustaining a judicial invasion of the province of the jury would involve other error of the same character.

I regret that our court has found it necessary to depart from a rule which has heretofore been so uniformly followed throughout the land and which seems to me to be so clearly dictated by our Delaware constitution.