STATE *vs.* PETER KRAKUS, *alias* PETER MELBA.

1.  HOMICIDE—DEFINITION OF "HOMICIDE"—"FELONIOUS HOMICIDE".

"Homicide" is the killing of one human being by another, and "felonious homicide" includes both murder of the first and second degrees.

2. HOMICIDE—MURDER—"MALICE".

"Malice", which in legal contemplation is not restricted to spite or malevolence towards decedent, but includes the general malignity and reckless disregard of human life which proceed from a heart void of a just sense of social duty and fatally bent on mischief, is an essential element of murder of the first and second degrees.

3. HOMICIDE—"MURDER OF THE FIRST DEGREE"—ELEMENTS—"EXPRESS MALICE AFORETHOUGHT".

"Murder of the first degree" is the killing of a human being with "express malice aforethought", which exists where one person kills another with a sedate, deliberate mind and formed design; but the design to take life may be but the conception of a moment, and is sufficient where the slayer had time for thought, and, thinking, did intend to kill.

4. HOMICIDE—MURDER OF THE FIRST DEGREE—USE OF DEADLY WEAPON.

A deliberate selection and use by accused of a deadly weapon is a circumstance of a deliberate formed design to kill, in the absence of evidence to the contrary.

5. HOMICIDE—"MURDER OF THE SECOND DEGREE"—"IMPLIED MALICE".

In "murder of the second degree" the crime is committed with "implied malice"; that is, malice inferred from the facts proved. Where there is no deliberate mind or formed design to take life, but the killing is done without justification or excuse, and without provocation, or sufficient provocation, there is sufficient malice to make the killing murder of the second degree.

6. HOMICIDE—MURDER OF THE SECOND DEGREE—IMPLIED MALICE.

Where a killing is committed without design and premeditation, but under the influence of a wicked and depraved heart, or with a reckless disregard of human life, the law implies malice, and the offense is murder of the second degree.

7. ARREST—RIGHT TO ARREST—NECESSITY OF WARRANT.

A police officer of a city is a peace officer of the state, and may arrest one without warrant for an offense committed in his presence, for which he could make an arrest with a warrant if committed out of his presence.

8. HOMICIDE—MURDER—RESISTING OFFICER MAKING LAWFUL ARREST.

One who resists an officer making a lawful arrest, and who slays the officer in unlawful resistance, is guilty of murder, and if done with express malice aforethought is guilty of murder of the first degree.

9. ARREST—RIGHT OF OFFICERS.

A known police officer, attempting to make an arrest, need not state his character and authority before making the arrest, and every one must know the character of an officer who is acting lawfully within his proper jurisdiction.

10. ARREST—RIGHTS OF OFFICERS.

Where an officer in making a lawful arrest is resisted, he may use such force as is reasonably necessary to make the arrest, to prevent an escape, and to protect himself from bodily harm.

11. ARREST—CRIMINAL CHARGES—AUTHORITY TO ARREST—OFFICERS.

Where accused unlawfully shot a police officer at the time the latter was attempting to make a lawful arrest, the shooting was a felony; and, if committed in the presence of another officer, the latter could attempt to arrest accused, and use necessary force to detain accused, and overcome his resistance to arrest, and prevent his escape.

12. CRIMINAL LAW—REASONABLE DOUBT.

The state must prove accused's guilt beyond a reasonable doubt, and where the jury, after considering the evidence, entertain a reasonable doubt, the doubt must inure to the benefit of accused, and he must be acquitted; but the doubt must not be a mere fanciful and speculative one, but a reasonable, substantial doubt, remaining after considering the evidence.

(*March* 23, 1915.)

PENNEWILL, C. J., and BOYCE and CONRAD, J. J., sitting.

*Josiah O. Wolcott*, Attorney General, and *Armon D. Chaytor, Jr.*, Deputy Attorney General, for the state.

*David J. Reinhardt* for the prisoner.

Court of Oyer and Terminer, New Castle County, March 22, 1915. Peter Krakus, *alias* Peter Melba, was indicted for murder of the first degree, charging him with killing Francis X. Tierney, a police officer, at Sixth and Market Streets, in the City of Wilmington, on Saturday afternoon, March 6, 1915, while the officer was attempting to arrest the prisoner.

Further facts appear in the charge of the court.

PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—The prisoner, Peter Krakus, alias Peter Melba, is charged in this indictment with murder of the first degree.

It is claimed by the state that the prisoner on Saturday, March sixth of the present year, at Sixth and Market Streets in this city, without excuse or justification, deliberately, designedly and with express malice aforethought, shot and killed Francis X. Tierney, a police officer of this city, while he was attempting, in the discharge of his duty, to arrest the prisoner. It is further claimed by the state that the prisoner had several times shot Sharpless, another police officer, at or immediately before Tierney attempted to make the arrest, and that no shot was fired at

the prisoner by either officer, or any one else, before the officers were shot.

The defendant, by his counsel, does not contend that he is not guilty of any crime, but claims that he is not guilty of any crime greater than murder of the second degree.

It will not be necessary, therefore, for the court to define and explain to you any crimes other than murder of the first and second degree.

[1, 2]   The only thing you are here to try, the prisoner's counsel claims, is whether the prisoner is guilty of murder of the first or second degree.   But before defining the two degrees of murder, we may say, that homicide is the killing of one human being by another, and felonious homicide includes both murder of the first and second degree.   Malice is an essential ingredient of murder of both degrees; and without malice there can be no murder either of the first or second degree.

Malice is not easily defined.   It is a condition of the mind or heart, and in legal contemplation is not restricted to spite or malevolence towards the particular person slain, but also includes that general malignity and reckless disregard of human life which proceed from a heart void of a just sense of social duty and fatally bent on mischief.

[3, 4]   Murder of the first degree is where the killing was done with express malice aforethought.   To constitute this crime the malice must be what the law terms express malice.   Express malice aforethought exists where one person kills another with a sedate, deliberate mind and formed design, which formed design may be manifested in many ways, as, for instance, by lying in wait for the deceased, by a former grudge, ill will, spite, hatred, or malevolence towards the deceased, or any other circumstances which disclose the formed design, purpose or intention of the accused towards his victim at the time the crime was committed. The deliberate selection and use of a deadly weapon is a circumstance, which in the absence of satisfactory evidence to the contrary, indicates the existence, in the mind of the person committing the act, of a deliberate formed design to kill.

If the jury are satisfied from the evidence that the prisone

when he killed the deceased, deliberately intended so to do, the length of time that said intention existed is immaterial. If a design or intention to take life be but the conception of a moment, it is sufficient, for if the slayer had time for thought, and thinking did intend to kill, it is just the same in legal contemplation as if he had intended it for a length of time, and killing under such circumstances would be deliberate and premeditated.

[5, 6] Murder of the second degree is where the crime is committed with implied malice; that is, where the malice is not express, as in murder of the first degree, but is an inference or conclusion of law from facts actually proved. It is where there is no deliberate mind or formed design to take life, but where the killing was done without justification or excuse, and without provocation, or without sufficient provocation to reduce the offense to manslaughter. For example, where the killing was committed without design and premeditation, but under the influence of a wicked and depraved heart, or with a cruel and reckless disregard of human life, the law implies malice.

[7] A police officer of the City of Wilmington is a peace officer of this state, and it is well settled that a peace officer such as a county constable or city policeman may arrest a person without a warrant for an offense committed in the presence and view of such officer, for which he would have a right to make the arrest with a warrant if committed out of his presence.

[8] When a party resists an officer who is making a lawful arrest and slays the officer in unlawful defense or resistance, it is murder, and if done with express malice aforethought, it is murder of the first degree.

[9] With regard to a known public officer it is not necessary for him to state his character and authority before making the arrest. The laying of hands on the defendant is an arrest. Every one is bound to know the character of an officer who is acting lawfully within his proper jurisdiction, and every citizen is bound to submit peaceably to such officer.

[10] If the officer in making a lawful arrest be resisted he may use such force as the circumstances reasonably require, in

order to make the arrest, to prevent an escape, or for the purpose of protecting himself from bodily harm.

[11] If the prisoner unlawfully shot officer Sharpless at the time that officer was attempting to effect a lawful arrest, then such shooting constituted a felony, and, if committed in the presence of Tierney, it justified Tierney in attempting to arrest the prisoner; and Tierney was justified in using such force as was necessary to secure and detain the offender, overcome his resistance and prevent his escape.

In considering the evidence with a view to determine whether the prisoner is guilty of murder of the first degree, you must be guided by the legal definitions and nature of these two degrees of murder, and bear in mind the distinction between malice express and malice implied, as these have been explained to you.

[12] Now, gentlemen of the jury, we have no further instructions to give you except to say, as we usually say in a criminal case, that in order to convict the prisoner the state must prove his guilt beyond a reasonable doubt. If, after carefully and conscientiously considering and weighing all the evidence in the case, you should entertain a reasonable doubt of the prisoner's guilt, that doubt must inure to his benefit, and your verdict should be not guilty. But such a doubt must not be a mere fanciful, vague or speculative doubt, but a reasonable, substantial doubt, remaining in your minds after a careful consideration of all the evidence, and such a doubt as reasonable, fair-minded and conscientious men would feel constrained to entertain under all the facts and circumstances of the case.

Under this indictment, you may find the prisoner guilty in manner and form as he stands indicted—that is, guilty of murder in the first degree—or guilty of murder in the second degree, as in your judgment the evidence shall warrant.

Verdict, guilty of murder in the first degree.

Whereupon counsel for the prisoner moved for a new trial and in arrest of judgment. The prisoner was remanded until Friday, the twenty-fifth of March. On that day the motion was

abandoned, and the Attorney General moved for sentence. There-
upon the court, by PENNEWILL, C. J., said:

Peter Krakus, *alias* Peter Melba, stand up.

Peter Krakus, *alias* Peter Melba, you were indicted by the
grand jury of this county for murder of the first degree.

Upon that indictment you had a fair and impartial trial.
Your counsel with great fidelity and ability, presented to the
court and jury every fact and argument which in his judgment
were available for your defense. The jury, nevertheless, rendered
a verdict of guilty; and it therefore becomes the solemn duty of
this court to pronounce the sentence of the law upon you for the
commission of the heinous crime for which you were indicted.

Have you anything to say why the court should not now
pronounce the sentence of the law upon you?

*The Prisoner:* I have nothing to say.

PENNEWILL, C. J.:—The duty the court must now perform
is most painful and distressing, but it is a duty that is imposed
by the law, and we cannot avoid it.

The sentence of the law, as considered by the court, is that
you, Peter Krakus, *alias* Peter Melba, be now taken from the
bar of this court to the New Castle County Workhouse, the pub-
lic prison of this county, the place from which you came, and be
there safely and securely kept in custody until Friday, the four-
teenth day of May, in the year of our Lord 1915, and on that
day, between the hours of ten o'clock in the morning and three
o'clock in the afternoon, you be taken to some convenient place
of private execution within the precincts of said prison inclosure,
and that you be then and there hanged by the neck until you be
dead; and may God have mercy on your soul.

You are now committed to the custody of the board of
trustees of the New Castle County Workhouse until this sentence
is carried into execution.