### STATE *vs.* LEON GULCZYNSKI.

1. ARREST— FFICERS APPROACH AND INQUIRY HELD NOT TO CONSTITUTE ARREST.

Where a uniformed officer merely approached defendant and asked him what he had in a package, defendant was not thereby placed under arrest.

2. ARREST—ARREST WITHOUT WARRANT AFTER ADMISSION ACCUSED POSSESSED LIQUOR HELD VALID.

An arrest without warrant being valid if for an offense committed in the officer's presence or view, where accused, upon being accosted by an officer and asked what he had in a package, finally replied, "Liquor, two gallons," *held* that his subsequent arrest was valid.

3. WORDS AND PHRASES—"LIQUOR."

"Liquor" as the word is commonly used, means intoxicating liquor.

4.  ARREST—OFFICER'S AUTHORITY TO ARREST WITHOUT WARRANT FOR
    OFFENSE "IN HIS PRESENCE" STATED.

The words "in his presence," as used in connection with an officer's
authority to make an arrest without a warrant for an offense committed "in
his presence," cannot be construed technically or strictly; it being sufficient
to justify an arrest if the officer knows the offense was committed, which
knowledge he may obtain, not only by seeing but by accused's admissions
before arrest.

5.  ARREST—SEARCH AFTER VALID ARREST IS VALID.
    Search of a prisoner after a valid arrest is valid.

*(September* 29, 1922.)

PENNEWILL, C. J., RICE and RODNEY, J. J., sitting.

*Aaron Finger* and *Clarence A. Southerland,* Deputy Attorneys-
General, for the State.

*Philip L. Garrett, J. Frank Ball, George W. Lilly, Ayres J.
Stockly* and *J. Paul Green* for defendant.

Court of General Sessions for New Castle County, Septem-
ber Term, 1922.

Indictment for illegal possession of spirituous liquors, No. 2,
March Term, 1922.

Motion for the return or destruction of liquor illegally seized.
The defendant presented the following petition:

"The petition of Leon Gulczynski, the defendant in the above
entitled case, respectfully represents:—

"1. That he is a resident of the City of Wilmington, New
Castle County and State of Delaware, and resides in said City at
No. 6 Sixth Avenue, and has a place of business at No. 600 East
Third Street.

"2. That on the Ninth day of February, A. D. 1922, at about
8:15 in the morning, he was proceeding on Fourth Street near
French, in the City of Wilmington, when he was approached by
an officer of the Police Department of the City of Wilmington,
who, without a warrant for the arrest of your petitioner, or with-
out a warrant to search his person, seized and took from the person
of the said defendant, your petitioner, two tin containers, alleged
to contain alcoholic liquor, the property of your petitioner, and
that the said property was delivered by the said officer thus il-

legally searching your petitioner, to the Police Department of the City of Wilmington, contrary to law, and in violation of the rights guaranteed to your petitioner under *Article* 1, *Section* 6 of the Constitution of the State of Delaware, and that the said property is now under the control of the Attorney-General of the State of Delaware.

"Your petitioner, therefore, prays this Honorable Court to make an order upon the Attorney-General of the State of Delaware, to return to your petitioner the property so taken and held."

The defendant testified that on February 9th, last, while walking on Fourth Street in Wilmington, some police officers called him, grabbed him and asked, "What have you got in that package?"; to which he replied, "What do you want to know for?"; that the officer then told him if he did not tell him what he had in the package he would arrest him; that after this threat was made he told the officer what he had and was arrested and taken to the police station where he was told to open the package but refused to do so. He further testified that he had the liquor in two containers covered with paper when stopped by the officer. The police officer who made the arrest testified that he had received information that defendant was bringing liquor to his store, and accompanied by other officers, he went out and found the defendant and asked him what he had in his package, and he answered, "What do you want to know for?"; that he asked him again, and the defendant said, "You know what I have got"; that he then sent for another officer, and again asked the defendant what he had, and he said, "Liquor, two gallons"; that up to that time he had not placed his hands on the defendant, and did not place him under arrest until he said he had liquor; that the defendant was then taken to the police station and searched; that the defendant did not tell what kind of liquor he had but was arrested as soon as he said he had liquor in his package. Another officer testified that the defendant said, "Liquor", when he was asked what he had, and a third officer testified that the defendant was asked three times what he had in his package, and the first time he said, "Liquor", and the third time, "Whiskey".

PENNEWILL, C. J., delivering the opinion of the Court:

There are two questions raised under the testimony:

1. Was the defendant arrested before he admitted he had liquor in his package?

2. Was the officer justified in making the arrest after the admission, without a warrant?

[1] It has been held by this court in some cases that to constitute an arrest, the officer shall place his hand on the accused, or otherwise take possession of his person. But even if this is not necessary, certainly the officer must do or say something from which the accused can reasonably believe that he is under arrest. He must have reasonable ground to believe that he cannot go away, that he is restrained of his liberty. The officer in this case was in uniform, and the accused, therefore, knew he was accosted by an officer, and no doubt thought he was bound to stop when approached. But we do not think the mere fact that an officer in uniform walks up to a person on the street and asks him what he has in his package, or on his person, is enough to constitute an arrest. The officer, when he approached the man and questioned him, no doubt suspected he had intoxicating liquor in his package, and the accused may have thought he was under arrest because of his guilty knowledge, and the officer's questions, but we do not think these facts and circumstances are sufficient to show an arrest before the accused admitted his package contained liquor.

[2, 3] Was the arrest that was made after the admission legal?

It was if the accused had committed a crime in the officer's presence or view, and the officer knew it. When the accused admitted that he had two gallons of liquor on his person, did the officer have a right to assume that the liquor was intoxicating? We think there is no doubt that the word "Liquor", in common usage today, means intoxicating liquor, and the officer was, therefore, justified in believing that it was of that character. The accused had, at the time of his arrest, more than one quart of intoxicating liquor in his possession, and was, therefore, violating the law. And when he admitted that he had in his possession

more than one quart of liquor, which the officer had a right to assume was intoxicating, he had committed an offense in the presence or view of the officer, within the meaning of the law.

Under the common law, and under the law of this State, a peace officer has a right to arrest without a warrant any person who commits a breach of the peace in his presence or within his view. 2 *R. C. L.* 447, 448; *State v. Krakus,* 5 *Boyce* 326, 93 *Atl.* 554; *State v. Mills,* 6 *Penn.* 497, 69 *Atl.* 841.

[4] To justify an arrest, without a warrant, where the offense charged or suspected is a misdemeanor, it is necessary that it should have been committed in the presence of the officer, or, as some courts express it: the officer must actually see the offense committed. It is true, as stated in *Pricket v. Ridgeway,* 25 *S. E.* 608, that the officer has no authority, upon mere suspicion, or upon mere information derived from others, to arrest a citizen and search him in order to ascertain whether or not he is carrying a concealed deadly weapon. But if in that case the defendant had admitted to the officer, before his arrest, that he had on his person concealed, a deadly weapon, it is hardly conceivable that the Court would have held the arrest illegal. The words, "in his presence", could not be construed so strictly, and technically. The law requires that the offense shall be committed in the officer's presence so that a citizen shall not be arrested on suspicion, information or mere belief. To justify the arrest, without a warrant, the officer must know an offense had been committed, and he can obtain that knowledge, not only from seeing the act committed, but also from what he actually sees together with the admission of the accused.

In the instant case the arresting officer had been told that the defendant was violating the liquor law, but that was not enough to justify his arrest. The officer found the defendant on the street carrying a package which was believed to contain intoxicating liquor. The officer asked the defendant what he had in his package, and he said, "Liquor, two gallons". With that admission the knowledge of the officer was just as complete and certain as though he had caught the defendant holding in his hand a bottle

containing more than a quart of intoxicating liquor. The possession constitutes the crime, and if the officer sees the liquor in the possession of the accused, or the accused admits he has it in his possession, the offense is committed in the presence of the officer in legal contemplation, and an arrest can be made without a warrant.

[5] If the defendant's arrest was legal the search of the prisoner after his arrest was also legal. This is not denied; in their brief counsel for the defendant say:

"It is conceded that the police have a right upon making a lawful arrest without a search warrant, to search the person of a suspect and to seize any instrument or evidence of crime thus discovered. But such incidental right is predicated absolutely upon the arrest having been lawful. As the offense in the case under consideration was not committed in the presence of the officer, in legal contemplation, the arrest was illegal and consequently the search incidental thereto was illegal".

In the case of *Weeks v. U. S.*, 232 *U. S.* 381 (392), the Court, in stating what the case was, said: "It is not an assertion of the right on the part of the Government, always recognized under English and American law, to search the person of the accused when legally arrested, to discover and seize the fruits or evidence of crime".

Defendant's petition is, therefore, dismissed.