THE STATE OF DELAWARE v. THOMAS H. WINSETT, WILBERT A. WEEKLEY, EDWARD J. MAYERHOFER.

Charge to the Jury *June* 24, 1964.

Opinion as Revised *December* 8, 1964.

DUFFY, P.J., sitting.

*Peter Warren Green* and *G. Francis Autman,* Deputy Attys. Gen., for the State.

*H. James Conaway, Jr.* for Thomas H. Winsett.

*C. W. Berl, Jr.* for Wilbert A. Weekley.

*Arthur J. Sullivan,* for Edward J. Mayerhofer.

Superior Court of Delaware, New Castle County, No. 1099-1103 Criminal Action 1963.

## COURT'S CHARGE TO THE JURY

DUFFY, President Judge, charging the jury:

Members of the jury, it is my duty as a judge to instruct you in the law as it applies to this case and it is your duty as jurors to follow the law as I state it to you. It is your exclusive province to determine the facts of the case and to consider and weigh the evidence for that purpose. The authority vested in you is not an arbitrary power; it must be exercised with sincere judgment, with sound discretion, and in accordance with the rules of law I state to you.

If, in these instructions, any rule, direction or idea be stated in various ways, no emphasis thereon is intended by me, and none must be inferred by you. For that reason you are not to single out any certain sentence, or any individual point or instruction and ignore the others. You are to consider all of these instructions as a whole and to regard each in the light of all the others.

At times during the trial I have passed upon the question of whether or not certain offered evidence might be admitted. You are not concerned with the reasons for such rulings, and you are not to draw any inferences from them. Whether offered evidence is admissible is purely a question of law. In admitting evidence to which an objection was made I did not determine what weight should be given to that evidence, nor did I pass upon the credibility of the witnesses. Any offer of evidence that I rejected you must not consider. As to any question to which an objection was sustained, you must not speculate upon what the answer might have been, nor are you concerned with the reason for the objection.

The defendant Thomas H. Winsett has been indicted on a charge of murder in the first degree. It is alleged that on October 17, 1963, he killed Robert A. Paris with express malice aforethought.

The defendants Wilbert A. Weekley and Edward J. Mayerhofer have been indicted on charges of accomplice to murder in the first degree. It is alleged that on October 17, 1963, they aided and abetted Thomas H. Winsett to kill Robert A. Paris with express malice aforethought.

All three defendants have been indicted on a charge of conspiracy to kill Robert A. Paris with express malice aforethought.

The fact that the Grand Jury indicted the defendants is not to be considered by you as evidence of their guilt of any crime. Whether they are or are not guilty is for you to determine solely from the evidence which has been presented during the trial. If your recollection of the evidence differs from anything said about it by

counsel, or by the Court, you must be guided entirely by your own recollection. The determination of the true facts and the drawing of any inferences from the proven facts are matters solely within your province.

Counts II, III and IV of the indictment are based upon a statute of this State which provides as follows: [1]

"Whoever commits the crime of murder with express malice aforethought * * * is guilty of murder in the first degree and of a felony, and shall suffer death."

Another statute of this State provides as follows: [2]

"Whoever commits the crime of murder, other than murder in the first degree, is guilty of murder in the second degree and of a felony."

The State has produced evidence from which it contends that the defendant Winsett, without justification, killed Robert A. Paris on October 17, 1963, under circumstances which amounted to first degree murder. The State also contends that its evidence shows that the defendants Weekley and Mayerhofer aided and abetted the killing of Robert A. Paris on October 17, 1963, under circumstances which amounted to first degree murder. The State also argues that its evidence shows that all three defendants conspired to kill the deceased with express malice aforethought.

The defendants, by their pleas of not guilty, have placed directly in issue every essential element of the State's case against them. Each essential element must be proven by the State to your satisfaction beyond a reasonable doubt. The defendants contend that they are not guilty of any charge. And as to homicide, they say that the shot which killed the deceased was fired in self-defense.

----

[1] 11 *Del. C.* Sec. 571.
[2] 11 *Del.C.* Sec. 572.

While the charges involve murder in the first degree, it is possible, under these charges, for the jury to make any one of four findings, as the evidence shall warrant:

(1) Murder in the first degree; or

(2) Murder in the second degree; or

(3) Manslaughter; or

(4) Not guilty of any crime.

You must keep in mind that there are three defendants in this case. The law that I state to you is applicable to the charges against each defendant, except as I otherwise indicate. You must weigh and consider the evidence against each defendant in light of the law as I state it. During the trial I admitted certain evidence against each defendant. That evidence is, of course, applicable only to the charges against the particular defendant or defendants as to whom it was admitted. It is not evidence against any other defendant and may not be considered by you in connection with the charges against any other defendant.

Homicide is the killing of one human being by another. Felonious or wrongful homicide is divided into three classes: murder in the first degree, murder in the second degree, and manslaughter. To constitute murder either of the first or the second degree, the element of malice must be present; without malice there can be no murder, and with malice there can be no manslaughter.

Malice is the great test or criterion of murder. It is not easy to explain clearly what is meant in law by "malice." In common acceptance the term means hatred, spite, or ill will against a person. But in its legal sense, the sense in which it is used with respect to the crime of murder, malice is more comprehensive than mere personal hatred, spite, or ill will by one person against another. While malice includes these things, it also comprehends and includes all acts done from an

unlawful and wrongful motive; to put it another way, malice includes all acts done voluntarily and with a wilful disregard for the rights and safety of others. Malice, therefore, is a condition of mind or heart, existing at the commission of the fatal act; it includes that general reckless disregard of human life which proceeds from a heart and mind void of a just sense of social duty and fatally bent on mischief.

In murder of the first degree the malice must be express or actual malice; in murder of the second degree the malice is inferred or implied from the facts proven.

Express or actual malice, as the term is used in defining murder in the first degree, exists when the killing of another is done with a sedate, deliberate mind and a formed design to kill or to do great bodily harm. Each of these elements must be proved by external circumstances, that is, by circumstances other than the mere fact of killing. These may be shown by something the accused did or said before the killing, or by other circumstances which indicate that the accused acted with a sedate and deliberate mind which resulted in the intention to kill, or to do great bodily harm; each element, together with malice, must be present and proved by the State beyond a reasonable doubt.

Implied or constructive malice must be shown by the character of the fatal attack and the surrounding circumstances. Where there is proved no fact or circumstance indicating that the accused acted with a sedate and deliberate mind, yet where the fatal act was unlawful and cruel and voluntarily committed, without adequate provocation, and in circumstances showing a wicked indifference to human life or with a reckless disregard of the consequences, the law implies or infers malice.

Murder of the first degree, therefore, is where one person kills another with express or actual malice aforethought; that is, with a sedate, deliberate mind and a formed design to kill or do great bodily harm. Such sedate, deliberate mind, resulting in the intention to kill or to do great bodily harm, may be shown in various ways; it may be

shown, for example, by lying in wait, antecedent threats or menaces, proof of hatred, ill will, spite or jealousy against the intended victim, or by plans or schemes to do great bodily harm.

No specific length of time is necessary to make an act a deliberate act. A deliberate act may be very sudden. If the accused, before committing the fatal act, had made up his mind to kill the intended victim, even though his design to kill be but the conception and intention of a moment, it is as deliberate in law as if it had been the design of hours, and if the accused had time for reflection and thought, and did think, and did then intend to kill, and did kill, it is just as much a case of deliberate premeditated killing as if he had intended it for a length of time.

Murder in the second degree is where the killing is done, not with express malice, but, rather, with implied or constructive malice, that is, where the malice is inferred from facts actually proved. Malice is implied by law from every intentional cruel act committed by one person against another, however sudden the act may be. The law considers that he who commits a cruel act voluntarily, does it maliciously. Every person is presumed to contemplate and intend the natural and ordinary consequences of his own voluntary act; if the act, voluntarily and wilfully done, has a direct tendency to destroy the life of another, the natural conclusion from the fact is that the destruction of the person's life was intended. For example, the intentional use of a deadly weapon upon the body of another, without sufficient cause or provocation, is sufficient to warrant the inference of malice.

Murder in the second degree, therefore, is where the killing is done without the premeditation or deliberate mind required to make the act murder in the first degree, but nevertheless is done without justification or excuse, and without adequate provocation, and with a wicked and depraved heart, or with a cruel and wicked indifference to human life. In such case the law implies malice and renders it incumbent upon the accused to show by evidence that the killing was not in fact malicious, or that there were circumstances of mitigation, extenuation, justification or excuse.

Manslaughter is where one person unlawfully kills another, without malice in his mind or heart; the absence of malice is the feature which distinguishes manslaughter from murder. For example, where one in a sudden fight, in the heat of blood, or in a gust or transport of passion, without time for reflection or for the passions to cool, kills another, such killing amounts to manslaughter.

· [12,13] This is because the law makes allowance for human frailty or infirmity under great and sudden provocation. But in order to reduce the crime from murder to manslaughter, where a dangerous or deadly weapon is used, the provocation must be great; it must be so great as to produce such an actual frenzy of the mind as to render the accused, for the time being, utterly deaf to the voice of reason. Provocation, as meant in law, must be something which the slayer feels at the instant of the fatal act, and he must act under the sting of that provocation and resent it at once without delay or time for thought or reflection; if, between the provocation and the fatal act, there is time for thought or reflection, or for passion to subside and blood to cool, the provocation will not avail.

Therefore, while murder proceeds from a wicked and depraved spirit, and is characterized by malice, manslaughter results, not from malice, but from unpremeditated and unreflecting passion.

 There is another rule which has application here. It is the law that all persons who join together with a common intent and purpose to commit an unlawful act which, in itself, makes it not improbable that a crime not specifically agreed upon in advance might be committed, are responsible equally as principals for the commission of such an incidental or consequential crime, whenever the second crime is one in furtherance of or in aid to the originally contemplated unlawful act.[3]

If you find that the defendants, or any two or more of them, joined together with a common intent and purpose to steal television

---

[3]*State v. Norris,* 6 Terry 267, 71 A.2d 755 (1950).

sets, and that this was done under circumstances which made it not improbable that a killing of a human being with implied or constructive malice might occur, or that a manslaughter might occur, then such defendants are responsible under the respective counts of the indictment for murder in the second degree or manslaughter or as accomplices to either of those crimes, as you find the evidence to be, provided that such homicide was done in furtherance of, or in aid to, the stealing of television sets.

I turn now to the individual defendants. If you find that the defendant Winsett fired the weapon with the projectile which killed Robert A. Paris and that when he did so it was with express malice aforethought, that is, in pursuance of a sedate, deliberate mind and with a formed intent to take his life or to do him great bodily harm, then your verdict should be guilty of murder in the first degree.[4] If you find such killing was with implied rather than express malice, your verdict should be guilty of murder in the second degree; and if you find it to have been an unlawful killing without malice, then your verdict should be guilty of manslaughter; if you find such killing was not unlawful, then your verdict should be not guilty.

A defense in this case is that the defendant Winsett fired the shot or shots in the necessary defense of his own life or for the purpose of preventing great bodily harm to himself. This requires a consideration of the rights and duties of the defendant and of Trooper Paris at the time immediately preceding his death. In connection with this and with the permissible force for arrest, I call to your attention a statute of our State which provides as follows:[5]

"(a) No unreasonable force or means of restraint shall be used in detaining or arresting any person.

"(b) A peace officer who is making an arrest need not retreat or desist from his efforts by reason of the resistance or threatened

---

[4]*State v. Krakus,* 5 Boyce 326, 93 A. 554 (1915).
[5]11 *Del.C.* Sec. 1904.

resistance of the person being arrested; nor shall he be deemed an agressor or lose his right to self-defense by the use of reasonable force to effect an arrest.

"(c) A peace officer, who has reasonable ground to believe that the person to be arrested has committed a felony, is justified in using such force as may be necessary to effect an arrest, to prevent escape, or to overcome resistance only when—

"(1) There is no other apparently possible means of making the arrest or preventing escape; and

"(2) The officer has made every reasonable effort to advise the person that he is a peace officer and is making an arrest."

 Trooper Paris was a peace officer under Delaware law. The stealing of television sets from a motel during the nighttime, after opening a door thereof and entering the motel for that purpose, is a felony under Delaware law. If you find that Trooper Paris had reasonable grounds to believe that the defendants had committed a felony, then he was justified in using such force as was necessary, including the firing of his service revolver at the defendants, to effect their arrest or to prevent their escape or to overcome their resistance, provided (1) there was no other apparently possible means of making the arrest and (2) he made every reasonable effort to advise the defendants that he was a police officer making an arrest. But Trooper Paris was obliged to use no more force than was necessary to secure the arrest. If he did then he became an aggressor and this gave rise to a right of self-defense on the part of the defendant Winsett.

I turn now to the duty and the rights of the defendant Winsett.

First, I call your attention to a statute which provides as follows: [6]

---

[6] 11 *Del.C.* Sec. 1905.

"If a person has reasonable ground to believe that he is being arrested by a peace officer, he shall refrain from using force or any weapon in resisting arrest regardless of whether or not there is a legal basis for arrest."

Under this statute you must first determine whether the defendant Winsett had reasonable ground to believe that Trooper Paris was a peace officer arresting him. If he had such grounds, then he had a duty to refrain from using force or any weapons in resisting the arrest. The officer's official character is enough in the first instance to require submission by the defendant.[7] But if you find that defendant Winsett did not have such reasonable grounds, then he may rely upon the doctrine of self-defense.

Self-defense is a valid and good defense to a charge of murder. The burden of establishing self-defense is upon the defendants, but they do not have to prove it beyond a reasonable doubt. Rather, it is sufficient if they prove it by a preponderance of the evidence.[8] Preponderance of the evidence is not as great or as certain proof as proof beyond a reasonable doubt. To establish by a preponderance of the evidence means to prove that something is more likely so than not so. Thus, the burden of the defendants to prove self-defense is merely to prove that it is more likely so than not so.

It is the law that one who is assaulted may take reasonable steps, including the use of reasonable force, to repel or resist the assault. And by the word "assault" I mean an offer or attempt to do bodily harm to another with the means available to do such harm. In repelling or resisting an assault, no more force may be used than is necessary for the purpose, and if a person is assailed and uses in his defense more force than is necessary for that purpose, he becomes the aggressor. The law recognizes the right of self-defense for the purpose of preventing, but not of revenging an injury to the person.[9]

[7]*Suhay v. United States,* 95 F.2d 890 (10 Cir.) (1938).
[8]*Brown v. State,* 9 Terry 427, 105 A.2d 646 (1954).
[9]*State v. Oliver,* 2 Houst. 585 (1855).

Our law is that a defendant must retreat only if he may safely do so. Whether or not he had a safe opportunity to retreat is a question for the jury. If he is suddenly threatened with a deadly weapon, very slight evidence would be sufficient to justify the jury in concluding that he had no time or opportunity to retreat and therefore could stand his ground.[10]

If the defendant Winsett was placed in a position at the time of the shooting in which his life was imperiled by Trooper Paris, and if he shot the officer without knowing or having reason to know that Trooper Paris was a peace officer and he had no time or opportunity for retreat, and if the shooting was apparently necessary to save the defendant Winsett's own life, then the killing of Trooper Paris was justifiable homicide in self-defense; it does not matter that Trooper Paris was legally seeking to arrest the defendant, if the defendant had no notice of such fact or no reason to know that fact.[11]

I now sum up to this point. Under Count II of the indictment you may find the following verdicts with respect to the defendant Winsett.

(1) Guilty of murder in the first degree, if you find that he killed Robert A. Paris with express malice aforethought; or

(2) Guilty of murder in the second degree, if you find that any such killing was with implied rather than express malice; or

(3) Guilty of manslaughter, if you find that any such killing was unlawful but without malice; or

(4) Not guilty, if you find that such killing was not unlawful.

I turn now to Counts III and IV of the indictment. These charge that the defendants Weekley and Mayerhofer aided and abetted the

---

[10]*Quillen v. State*, 10 Terry 114, 110 A.2d 445 (1955).
[11]*State v. Price*, 7 Boyce 544, 108 A. 385 (1919).

defendant Winsett to kill Robert A. Paris with express malice aforethought. This indictment is based upon a statute of this State which provides as follows:[12]

"Whoever aids, abets, procures, commands or counsels any other person to commit a crime or offense against the State is an accomplice and is guilty of the same crime or offense as the principal."

The statute also provides that an accomplice may be prosecuted, tried and convicted without the indictment, trial or conviction of the principal and that an acquittal of the principal shall not be a bar to the trial and conviction of an accomplice. In short, under our law one who aids and abets another to commit a crime, while punishable to the same extent as the principal, is nevertheless guilty of a separate and distinct offense. One can therefore be guilty as an accomplice under the statute, even though the crime alleged to have been aided or abetted or counselled is not actually committed.

Under this statute mere presence at the scene of the crime, although the one present made no effort to prevent the crime, is not sufficient to sustain a conviction of either of the defendants upon the charge of aiding or abetting. But, on the other hand, it is not necessary that the act or acts of either of the defendants be shown to have been efficient cause of the homicide of Trooper Paris. It is sufficient if the defendants or either of them, however, advocated or encouraged in some manner the commission of the crime. A person who is present at the scene of a crime, encouraging or inciting the same by words, gestures, looks or signs or who in any way, by any means, contributes to its execution, is guilty as an accomplice under the statute.[13] One who aids or abets after the crime is not an accomplice under the statute.

As I have already said to you, you must consider the evidence separately as to each of the defendants and you must do it in

[12]11 *Del.C.* Sec. 102.
[13]*Turner v. State*, 11 Terry 590, 137 A.2d 395 (1958).

connection with the charge of aiding and abetting made against the defendants Weekley and Mayerhofer. As to defendant Weekley, if you find that his wound was of such a nature as to render it improbable that he formed an intention to aid or abet or to conspire, then you should find him not guilty.

I have already defined the law with respect to self-defense. The principles that I stated with respect to the charge against defendant Winsett under Count II are applicable here. If you find that self-defense is available to the defendant Winsett, and if for that reason you determine that he is not guilty under Count II of the indictment, then you must also find the defendants Weekley and Mayerhofer not guilty under Counts III and IV. In short, they cannot be held criminally responsible for aiding and abetting a homicide which is found to have been committed in self-defense. But, on the other hand, if you find that the defendant Winsett is guilty under Count II, it does not, of course, necessarily follow that defendants Weekley and Mayerhofer, or either of them, are guilty under Counts III and IV. These are to be considered separately and independently.

While the defendants Weekley and Mayerhofer are each charged as an accomplice to murder in the first degree, each of them may be found guilty of that charge or, of being an accomplice to murder in the second degree or, of being an accomplice to manslaughter or, not guilty, as I have defined those terms.

Accordingly, under Count III of the indictment, you may find the following verdicts with respect to the defendant Weekley:

(1) Guilty of accomplice to murder in the first degree; or

(2) Guilty of accomplice to murder in the second degree; or

(3) Guilty of accomplice to manslaughter; or

(4) Not guilty.

Under Count IV of the indictment, you may find the following verdicts with respect to the defendant Mayerhofer:

(1) Guilty of accomplice to murder in the first degree; or

(2) Guilty of accomplice to murder in the second degree; or

(3) Guilty of accomplice to manslaughter; or

(4) Not guilty.

I turn now to Count V of the indictment which charges that all of the defendants conspired to kill Trooper Paris with malice aforethought. A conspiracy is the combination of two or more persons to do an unlawful act or a lawful act by unlawful means with unity of design and purpose. The gist of the conspiracy is the unlawful combination between the parties. No formal agreement between the parties to the conspiracy charged is necessary. It is sufficient that the minds of the parties meet understandingly, so as to bring about a deliberate agreement to do the acts and commit the offense charged. Conspiracy implies concert of design, but not participation in every detail necessary to carry the general purpose, or design into execution. Although the common design is the essence of the charge, it is not necessary to prove that the defendants came together, and actually agreed in terms to have that design and to pursue it by common means. If it be proved that the defendants pursued, by their acts, the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object. A conspiracy may be shown by either direct evidence or it may be shown by circumstantial evidence.

If you find that the defendants, or any two or more of them, engaged in an unlawful conspiracy, as I have defined that term to you, to murder Trooper Paris with express malice aforethought, as charged in the indictment, then your verdict should be, guilty as to Count V as to such defendants.

On the other hand, if you do not so find, or if you have a reasonable doubt concerning the gilt of the defendants with respect to Count V, your verdict should be, not guilty.

It is the law of this State that the failure of a person accused of crime to testify, shall not be construed or commented upon as an indication of his guilt. Therefore the fact that the defendants did not testify shall not be construed by you as an indication that they are, or that any one of them is, guilty of the crime charged. Just like every defendant in a criminal case in Delaware, each of these defendants is presumed innocent until proved guilty beyond a reasonable doubt.

The Court has admitted into evidence against each defendant a statement given by him. Each statement was admitted only against the person who made it. This statement should be considered against the person who made it, together with all other evidence against that same defendant, if you find that it was freely and voluntarily given, without duress or coercion, and free from promises or threats by others. Any statements of a defendant, written or oral, which were obtained by either mental or physical coercion, duress or intimidation, that is, any statements which are not the product of a free will, are not to be used as evidence against that defendant. It is for you to decide whether the statements are the products of a free will.

The degree of credit to be given to the statement is to be considered by you under the circumstances of the case. The whole of what the defendant who made the statement said on the subject at the time of making the statement should be taken together. You may believe that part which incriminates him and reject that part which is in his favor. Or you may believe so much as is in his favor and reject that which is against him, if you see sufficient grounds, upon all the evidence, for so doing. You are at liberty to judge of the statement, like any other evidence, from all of the proven circumstances of the case.

Expert testimony is the evidence of a person who is skilled in an art, science, profession or business, in a way which is not common to his fellowmen. This skill has come to the expert as a result

of special study or experience. The value of such testimony depends upon the learning and skill of the expert and varies with the circumstances of the case. The jury should consider the expert's means of knowledge, and the reasons he assigned for any opinions he gave. You should accept his testimony as you find his qualifications sufficient and his reasons satisfactory. You may accept his conclusions as you find them to be consistent with reason and experience, or otherwise satisfactory. The testimony of an expert is to be considered like any other testimony; it is to be tried by the same tests, and receive just so much weight and credit as you may deem it entitled to receive, viewed in connection with all the evidence in the case.

A portion of the evidence of the State's case against each defendant consists of that of participants in the crime of which each defendant is accused. The degree of credit to be given to the evidence of a participant or an accomplice is a matter exclusively within the province of the jury. Great caution in weighing such testimony is dictated by prudence and good reason. A jury may convict upon uncorroborated testimony of an accomplice, yet the better rule is that a conviction should not be had unless such testimony is corroborated in some material part by other testimony or the circumstances of the case.

Circumstantial evidence is received in both civil and criminal cases. Circumstantial evidence is where some facts being proved, amother fact follows as a natural or very probable conclusion from the facts actually proved. It is the inference of a fact from other facts proved; and the fact thus inferred is taken for granted, until the contrary is proved. And this is what is called circumstantial evidence.

Circumstantial evidence, in order to warrant a conviction, must be sufficient to satisfy you beyond a reasonable doubt. The rule is, that where the evidence is solely circumstantial, the jury must be satisfied (1) that the circumstances are consistent with the accused's having committed the act or acts charged as constituting the crime, and (2) that the circumstances are inconsistent with any reasonable conclusion other than, that the accused was the person who committed the act complained of. In short, the facts established by such evidence

must be such as to exclude any other reasonable conclusion.

These defendants, like every other person brought to trial in a criminal proceeding in this State, are presumed to be innocent until their guilt is established to the satisfaction of the jury, beyond a reasonable doubt. The burden of proving the commission of the offenses charged in the indictment rests upon the State. If, after carefully considering the evidence, you have a reasonable doubt of guilt of any or all of the defendants, you should give him or them, as the case may be, the benefit of such doubt. But proof beyond a reasonable doubt does not mean that the guilt of the accused must be established to an absolute certainty. Such a requirement would be impracticable and unreasonable.

Reasonable doubt does not mean a vague, speculative doubt, nor a mere possible doubt, but a substantial doubt; it is such a doubt as intelligent, reasonable and impartial men may honestly entertain after a careful and conscientious consideration of the evidence in the case.

In civil cases it is the duty of the jury to decide in favor of the party on whose side the weight of the evidence preponderates, and according to the apparent probability of proof. But in criminal cases, because of the graver consequences of a wrong decision, the jurors are required to be satisfied beyond a reasonable doubt of the guilt of the accused or, if they are not so satisfied, it is their duty to acquit the accused. In civil cases it is sufficient if the evidence in the aggregate agrees with and supports the hypothesis which it is adduced to prove; but in criminal cases it must not only do this, but also must be such as to produce a moral certainty of guilt and to exclude any other reasonable hypothesis or conclusion but that of guilt of the accused.

If you find the testimony to be conflicting by reason of inconsistencies, it is your duty to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you cannot do this, then it is your duty and privilege to give credit to that portion of the testimony which, in your judgment, is most worthy of credit and disregard entirely any portion of the testimony which, in your

judgment, is unworthy of credit. In so doing, you should take into consideration the demeanor of the witnesses as they testified before you, their apparent fairness in giving their testimony, their opportunities for learning and knowing the facts about which they testified, and any bias or interest that they may have concerning the outcome of this proceeding.

It is the duty of the Court to call your attention to a statute of this State which reads as follows: [14]

"In all cases where the penalty for crimes prescribed by the laws of this State is death, if the jury, at the time of rendering their verdict, recommends the defendant to the mercy of the Court, the Court may, if it seems proper to do so, impose the sentence of life imprisonment instead of death."

This statute is plain upon its face and means what it says. But it does not mean that the jury shall, in every case, make such recommendation, but only when the evidence, in the judgment of the jury, warrants it. It does not mean that the jury shall make such recommendation from sympathy alone. The statute, however, is a humane provision of the law. In this case if your verdict as to defendant Winsett should be, guilty of murder in the first degree, and/or if your verdict as to either defendant Weekley or Mayerhofer, or both of them, should be, guilty of accomplice to murder in the first degree, you would be warranted in making the recommendation as to any or all of such defendants, if you believe from the evidence, all things considered, that life imprisonment would meet the ends of justice and be sufficient punishment for the crime.

I will now summarize the possible verdicts. But before doing so, I caution you that the defendants are on trial only under the four specific counts in the indictment which you will have with you in the jury room. You are not concerned with any other crime of any kind.

---

[14] 11 *Del.C.* Sec. 3901.

First, as to the defendant Winsett, under Count II of the indictment you may return any of the following verdicts:

(1) Guilty of murder in the first degree; or

(2) Guilty of murder in the first degree with a recommendation of mercy; or

(3) Guilty of murder in the second degree; or

(4) Guilty of manslaughter; or

(5) Not guilty.

Second, as to the defendant Weekley, under Count III of the indictment you may return any of the following verdicts:

(1) Guilty of accomplice to murder in the first degree; or

(2) Guilty of accomplice to murder in the first degree with a recommendation of mercy; or

(3) Guilty of accomplice to murder in the second degree; or

(4) Guilty of accomplice to manslaughter; or

(5) Not guilty.

Third, as to the defendant Mayerhofer, under Count IV of the indictment you may return any of the following verdicts:

(1) Guilty of accomplice to murder in the first degree; or

(2) Guilty of accomplice to murder in the first degree with a recommendation of mercy; or

(3) Guilty of accomplice to murder in the second degree; or

(4) Guilty of accomplice to manslaughter; or

(5) Not guilty.

Next, as to all defendants, under Count V of the indictment you may find that:

(1) All defendants are guilty of conspiracy; or

(2) Two of the defendants (naming them) are guilty of conspiracy; or

(3) None of the defendants are guilty of conspiracy.

With these instructions for your guidance in the discharge of your solemn responsibility under the law, the case is now submitted to you for your verdict.

DUFFY, President Judge:

Thomas H. Winsett, Wilbert A. Weekley and Edward J. Mayerhofer were indicted for murder in the first degree, a capital offense, and for various other crimes. They were charged with murdering Robert A. Paris, a police officer of the State of Delaware, on October 17, 1963, with express malice aforethought. The alleged murder was by shooting with a shotgun when Trooper Paris attempted to arrest defendants while they were stealing television sets from a local motel. After various pretrial matters were ruled upon,[1] defendants were tried together beginning June 8, 1964. Winsett was convicted of murder in the first degree, and the jury recommended mercy. 11 *Del.C.* Sec. 571, 3901. Weekley and Mayerhofer were convicted of aiding and abetting murder in the second degree. 11 *Del. C.* Sec. 102.

This is the decision on motions by Winsett for an acquittal or for

---

[1]See the opinions of this Court in 200 A.2d 237 (1964), and 200 A.2d 692 (1964).

a new trial, and by Weekley and Mayerhofer for acquittals.[2] A single brief (and reply brief) was filed for all defendants. Their contentions are considered *seriatim:*

1. *Pretrial Publicity:* It is clear from the record in this case, including the examination of the jurors upon *voir dire,* that the adverse publicity of which defendants complain falls substantially short of that described in *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), and *Sheppard v. Maxwell,* 231 F. Supp. 37 (U.S.D.C., S.D., Ohio, 1964). There is just no reasonable comparison between the news reports immediately preceding the trials in Irvin and Sheppard and the news reports circulated during the two to three-month period preceding the trial in this case.[3] Such reports as were circulated were much less intensive in scope and depth than those which followed the death of Trooper Paris eight months before trial and the subsequent manhunt.

As to jurors called, my bench notes show that for the regular panel one hundred two jurors were drawn and excused or seated as follows:

| | | |
|---|---|---|
| Peremptorily Challenged | | |
| By the State | 11 | |
| By defendants | | |
| (jointly and severally) | 25 | 36 |
| Excused | | |
| For a medical reason | 1 | |
| For cause | 29 | |
| Because of "conscientious scruples" | 24 | 54 |
| Seated | | 12 |
| Total | | 102 |

---

[2]Messrs. Weekley and Mayerhofer filed motions for a new trial but withdrew them.

[3]I also note that in Sheppard the jurors went about their ordinary affairs after each trial day until after they retired to deliberate; then they were kept together until verdict. The jurors in the case *sub judice* were kept together under continuous supervision of Court personnel and cut off from all news media and from all unauthorized communications from the moment they were seated until verdict.

My recollection is that no juror was seated whom defendants, or any of them, challenged for any reason.[4] I should also note that the *voir dire* permitted in this case was probably broader in subject matter and more exhaustive in depth than any other in the modern history of this Court. And, even after this, the statistics as to jurors excused do not indicate a pattern of prejudice and bias such as defendants argue was present in the community in June 1964.

In summary, I find no community partiality or prejudice at work upon the panel from which the trial jury was selected, and even less do I find it in that jury. Irvin and Sheppard simply do not fit this case on its facts.

2. *Joint Trial:* Winsett argues that he did not obtain a fair and impartial trial because he was tried jointly with the two co-defendants. I refused to grant a severance prior to trial and I will not now change that ruling. *Burton v. State,* 1 Storey 546, 149 A.2d 337 (1959).

3. 3. *Admission of Defendants' Oral and Written Statements:* At trial, I excluded certain tape recordings taken about midnight and all evidence relating to statements of defendants taken thereafter. Defendants were apprehended about 5:30 P.M., and written statements were signed about 9:30 P.M. The statements made by defendants during this period were admitted into evidence over objection, and it is these which are again put in issue by the motions. The present contention is based largely upon the United States Supreme Court's decision in *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12

---

[4]As to alternates, none of whom was seated with the regular panel, my bench notes show as follows:

| Peremptorily Challenged | | |
|---|---|---|
| By the State | 1 | |
| By defendants | 1 | 2 |
| Excused | | |
| For medical reason | 1 | |
| For cause | 10 | |
| Because of "conscientious scruples" | 7 | 18 |
| Seated | | 2 |
| Total | | 22 |

L.Ed.2d 977 (June 22, 1964). This was decided while I was preparing the charge to the jury, and newspaper accounts of the opinion were then called to my attention by counsel. At that time I declined, in effect, to give defendants the benefits of any ruling in that case.

In considering Escobedo, it is important to note two facts. First, the Supreme Court has not, as yet at least, excluded all admissions obtained from a person suspected of crime. It may be moving in that direction, as the dissenters noted in Escobedo. But it did not take the "final step" in Escobedo, nor in *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L. Ed.2d 246 (1964). And one Court of Appeals has said just that. *Jackson v. United States,* 337 F.2d 136 (District of Columbia Court of Appeals, August 13, 1964).

Second, the Supreme Court has not, as yet at least, excluded all admissions made when a person accused of crime did not have an attorney nor get the benefit of "judicial caution." *Crooker v. California,* 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958); *Cicenia v. LaGay,* 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958). See the discussion of Escobedo's impact on this in Jackson.

In the case at hand the statements made in the field when defendants were caught and while they were en route to the police station were "threshold" statements. They were made under circumstances where the police purpose was *apprehension,* not confession, nor even investigation (except in its broadest sense). These statements came at the end of a manhunt while defendants were being taken into custody and while they were being taken to the security of a police station. It is neither required by the Supreme Court's explicit language nor by its implicit purpose to say that a defendant, *under those circumstances,* must be given an opportunity to consult with his lawyer, or else his statements, even if they meet all other constitutional tests, are inadmissible.

As to the writings given at the police station, my reading of Escobedo indicates that defendant's request for an opportunity to consult with his attorney and the consistent and insistent denial of that

request by the police comes close to the essence of the case.[5] The majority opinion concludes:

"* * * We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, *under the circumstances here,* the accused must be permitted to consult with his lawyer." (Emphasis added.)

Here, no defendant was denied a request to consult with a lawyer. At least two of the defendants were offered an opportunity to call counsel. One defendant declined to sign a statement and asked for and was given an opportunity to talk to a Deputy Attorney General. It should be noted that all defendants were mature, experienced persons. Both Winsett and Weekley had had prior experience with the police, at night, in a police station. Mayerhofer was a licensed private detective. In short, all three defendants were wise in the ways of police interrogation.

All defendants were warned before the written statements were taken that anything said might be used against them. Considering these and all attendant circumstances, I find that Escobedo, with its "incommunicado facts" and its emphasis upon denial of requests made, is not applicable.

4. *Circumstantial Evidence:* I believe that the contention of inadequacy of the evidence to support the verdicts loses its vitality in view of my refusal to strike the statements. With them, at least, the evidence is sufficient to support the verdicts.

All other grounds argued have been considered and found to be without merit. Defendants' motions are denied.

---

[5]A majority of the California Supreme Court has a different view. See *People v. Dorado,* 40 Cal. Rptr. 264, 394 P.2d 952 (August 31, 1964).

## ON MOTION FOR REARGUMENT

All defendants moved under Rule 33, *Del. C.* Ann. for reargument of the above opinion. The motion is based on several premises.

1. *As to the rule of Escobedo v. Illinois:* Defendants contend that the Court erred in various ways in the interpretation given to *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (June 22, 1964). At this time judicial application or discussion of Escobedo is limited. It may be that the courts of this State or the Federal courts will eventually give the case the broad application to which defendants now argue it is entitled. And broad it must be to apply standards fixed under the incommunicado and deceptive conditions created by the police in Escobedo to those which prevailed here. If the adversary system begins to operate for evidentiary purposes at the scene of apprehension, as it existed here (that is, at the end of a manhunt), then it will be under some extension of Escobedo, not under the case itself. In the present state of the law this Court should not enlarge the rule of the case, at least until the Delaware Supreme Court has had an opportunity to state its views.

My construction of Escobedo as a case dealing essentially with a denial of a request for counsel, under the facts there present, is supported by recent decisions of the highest courts in Maryland and Pennsylvania.

There are three reported cases in Maryland which are pertinent. The first of these is *Mefford v. State,* 235 Md. 497, 201 A.2d 824 (July 7, 1964). In that case the Court of Appeals concluded that the holding in Escobedo is limited to the facts and circumstances before the Supreme Court in that case. In distinguishing Escobedo, factually, the Court said:

"The facts in the cases now before us are not the facts on which the Supreme Court acted and to which it limited its holding in Escobedo. Mefford did not ever ask the State Police, to whom he freely

confessed, for a lawyer or even give a hint to them that he wanted to consult one. He was never denied the assistance of counsel."

The second Maryland case is *Parker v. Warden* of the Maryland Penitentiary, Md., 203 A.2d 418 (September 25, 1964), which involved a proceeding for post-conviction relief. Counsel had been appointed prior to arraignment and the petitioner was represented by counsel in all subsequent proceedings. But the petitioner contended that he had not been allowed to consult counsel prior to the time he confessed to the crime, and this was the precise point up for decision. As to it, Chief Judge Henderson, speaking for a unanimous Court, denied relief, saying:

"If we assume without deciding that the decision of *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (June 22, 1964), is effective retrospectively, we think the case is readily distinguishable. In the instant case the confession was made on December 30, 1959, and the indictment was not until February 8, 1960. It was not alleged or shown that counsel was ever requested, or permission to consult counsel or others denied, at the time of the brief interrogation leading to the confession."

Most recently, the Maryland Court of Appeals said, in *Green v. State*, Md., 203 A.2d 870 (October 20, 1964):

"We concluded in Mefford and Blackburn that the holding in Escobedo is limited to the facts and circumstances before the Supreme Court in that case. As was true in Mefford, there are a number of factors which distinguish the case before us from Escobedo. In the latter, the defendant had previously retained counsel; here, Green had not. There the defendant asked to see counsel and was denied; here there is no contention that Green ever requested counsel. Escobedo had had no previous experience with the police; Green had had several encounters with law officers and courts. In Escobedo there was a claim that the police promised the release of the defendant if he confessed; here there is no contention that the police made Green any promises."

And as to the right to remain silent, defendant was advised by

the police officer that:

"'* * * we must advise you that what you say must be free and voluntary on your part. There will be no promises, no one will threaten you in any manner, and what you say can and may be used against you in a court of law. Do you understand what I have just said?'"

The Court concluded that even if this did not amount to an apprisal to the defendant of his right to remain silent, that alone was not sufficient to making an otherwise voluntary statement involuntary.

In *Commonwealth v. Coyle,* Pa., 203 A.2d 782 (October 14, 1964), the Supreme Court of Pennsylvania made the following observation about Escobedo:

"During the course of Lt. Cullinane's [a Massachusetts State Police Officer] questioning, the record is convincing that the appellant did not ask for the assistance of counsel. We note that this, in itself, is not controlling since if such assistance were constitutionally required, the right thereto would not depend on a request: *Carnley v. Cochran,* 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). However, this factor substantially distinguishes the present case from the situation presented in *Escobedo v. State* of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Further, we do not interpret Escobedo, to mean that, counsel must immediately be afforded one taken into custody, under all circumstances, particularly where none is requested. The mere fact that appellant was unrepresented by counsel during the questioning does not invalidate admissions made against interest. See, *Commonwealth v. Graham,* 408 Pa. 155, 182 A.2d 727 (1962); *Crooker v. State of California,* 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958); *Cicenia v. LaGay,* 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958)."

The Court also noted that Lt. Cullinane's questioning involved a crime committed in Massachusetts, so a Pennsylvania offense was not the focal point of the inquiry. But Escobedo was distinguished as stated above.

Finally, a New York Supreme Court decision just reported makes a similar reading of Escobedo. In *People v. Agar,* 253 N.Y.S.2d 761 (November 24, 1964), the Court said that Escobedo decided only that "under the circumstances [t]here, the accused must be permitted to consult with his lawyer," and that means a case in which an accused requests a lawyer or in which a lawyer who is present asks to see the accused. And the Court concluded that under Escobedo, a confession taken from a defendant prior to the commencement of a judicial proceeding, is inadmissible when "the police have not effectively warned him of his absolute constitutional right to remain silent" *but only when* the suspect has requested and been denied an opportunity to consult with his lawyer.

The short of it is I find that Escobedo is not applicable on its facts. As to that case generally, I agree with Judge Shapiro, who said, in Agar:

"It is obvious that the law on the subject under discussion is in a state of flux and that the ultimate determination, while perhaps predictable, should not be anticipated by a court of original jurisdiction."

2. *As to sufficiency of the evidence:* Defendants Weekley and Mayerhofer argue that even if the signed statements were admissible, there is not sufficient evidence upon which to base their convictions for aiding and abetting the commission of murder.

I adhere to the ruling that I made at trial, following the principle stated in *State v. Norris,* 6 Terry 267, 71 A.2d 755 (1950). In that case Judge Wolcott said:

"The rule seems well settled that all persons who join together with 'a common intent and purpose to commit an unlawful act which, in itself, makes it not improbable that a crime not specifically agreed upon in advance might be committed, are responsible equally as principals for the commission, of such an incidental or consequential crime whenever the second crime is one in furtherance of or in aid to

the originally contemplated unlawful act."

I consider this rule equally applicable to a situation in which one defendant is charged as a principal and other defendants are charged, under 11 *Del.C.* Sec. 102, with aiding and abetting that defendant. And that is this case. Considering the circumstances under which the defendants conferred in New York, travelled to Delaware and met here, their purpose in coming to Delaware, the use of multiple cars, the presence of weapons and ammunition in the car, the actual or presumptive knowledge on the part of all defendants as to the presence of weapons and ammunition, the time of night in which the alleged crimes were undertaken, and all other surrounding facts, I conclude that under *State v. Norris,* there was evidence from which the jury could find that all defendants joined together with a common intent and purpose to commit an unlawful act (buglary and/or larceny) under circumstances which made it not improbable that a crime not specifically agreed upon in advance (murder in the second degree) might be committed, and that the second crime was in furtherance of the first.

3. *As to pretrial publicity:* Defendants also renew their contentions that pretrial publicity made impossible the selection of a fair jury. I believe that an examination of the transcript will show that defendants got the benefit of every doubt when a question arose as to whether or not a juror should be excused for cause. Prior to trial the Court took unusual steps to have in attendance a large number of potential jurors, and, with a large panel to choose from, defendants got the benefit of a liberal discretion. This is a significant reason why the number of jurors excused for cause was not less than it was. But even considering the number of jurors excused, I am by no means persuaded that this makes out a case of panel-wide bias.

In laying down the yardsticks for fairness, the Supreme Court said, in *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961):

"It is not required, however, that the jurors be totally ignorant

of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."

Within this test, I am satisfied that the jury which tried this case was free from bias and partiality induced by pretrial publicity.

4. *As to all other contentions and arguments made by defendants:* These have been considered and found to be without merit.

The motion is denied.